## S. T. SEAWELL v. GREENWAY, BRO. & CO.

Where a trustee, appointed by order of the court to administer a trust fund, makes a report, (but not a final one) in which he claims a credit; the action of the court approving his account, is not conclusive of his right to such credit, but at a future time, the court may investigate and restate his account.

In the administration of the trust, the court exercises the powers of a Court of Chancery, and may proceed in such manner as best suits the convenience of the court, and of the agents who assist in the administration of the trust, and as will best attain its fair and just administration for the creditors; and may properly consider orders passing the accounts of the trustee, as orders or judgments *nisi*, subject to be set aside upon future inquiry into their correctness.

A trustee cannot establish the fact of the loss of the trust fund by theft or robbery, by his own uncorroborated testimony.

In cases where a party is permitted to testify as to the extent of his loss by theft or robbery, a foundation must first be laid; and when this is done, there is a limitation upon his right to prove the extent of his loss, by his own oath; as, where the trunk of a traveler is stolen from a common carrier, he can only recover damages for such articles as are ordinarily necessary for the convenience and use of a traveler.

It is not clearly settled, that the party's own oath will be received, in any case, as to the extent of his damages, until the theft or robbery, as the case may be, has been proved *aliunde*.

The law on this subject is more clearly settled in the case of trustees, than in that of bailments.

Although Mr. Hill, in his work on the law relating to trustees, says, that where a part of the trust property is lost by robbery, without fault on the part of the trustee, "he will not be responsible for the loss, but it will be allowed him "in passing his accounts, and this amount may be proved by the trustee's "own affidavit, for it would frequently be difficult to obtain any other proof;" yet, he does not say that the oath of the trustee will be received to prove the robbery, and the extent of the loss. The cases cited by him to sustain the general proposition as stated, do not lay down the doctrine that the robbery itself, as well as the amount lost, may be proved by the trustee's own oath.

ERROR from Calhoun. Tried below before the Hon. Fielding Jones.

An assignment was executed by Chambers Etter, an insolvent, to a former trustee, for the benefit of his creditors. The

creditors applied to the District Court to enforce the assignment, and obtain payment of their claims. The trustee having died pending the litigation, application was made by the insolvent, with the concurrence·of the attorney of the principal creditors, to the district judge, for the appointment of the plaintiff in error as trustee in his place. The application was granted, and the plaintiff, under the said appointment, acted as trustee from the date thereof, in 1855. The other facts are stated in the opinion.

*Allen* and *Hale,* for plaintiff in error. The counsel for the trustee and plaintiff in error will rely upon the following positions :

1st. The order of the District Court, at the Spring Term, 1857, approving the report and account of the trustee, was final as between the parties to the suit and the trustee, upon this point; and the same court could not set it aside, without special cause, at a subsequent term.

2d. The trustee was a competent witness to prove the correctness of his accounts, in cases where other testimony could not reasonably be expected. (Miller v. Beverlys, 4 Hen. & Munf. Rep. 415.) And he was an officer of the court, whose return or report was entitled to *primâ facie* credence. (Penn v. Brewer, 12 Gill & Johns. Rep. 113; U. S. Eq. Dig., tit. Trusts, pl. 397.) His oath should be received as between parties who have shown a special trust and confidence in him; and the *onus* is upon them to prove a breach of duty. By the general principles of law, and from the necessity of the case, he must be allowed to prove a loss by robbery; he is often the only witness. (1 Phil. Ev. 145; 3 Id. 37, 56; Co. Litt. 87, a ; Southcote's Case, 4 Co. Rep. 487.) And it is well settled, that this principle extends to trustees ; and that they can prove a loss by robbery. (Hill on Trustees, 573, 574, and notes; 2 Spence's Eq. Jur. 937, and note ; 2 Story's Eq. Jur. § 1269; Morley v. Morley, 2 Ch. Cas. 2, cited in 3 Chit. Eq. Dig. 2934, pl. 26; Knight v. Lord Plymouth, 3 Atk. Rep. 480, cited in 3 Chit. Eq. Dig. 2495, pl. 16;

Furman v. Coe, Caines' Cas. 96.)    The cases of Jones v. Lewis,
2 Ves. Sr. Rep. 240, and Rowth v. Howell, 3 Ves. Jr. Rep.
565, were evidently decided upon the evidence of the trustee,
or his agent, who was equally interested.

Some *dicta* have fallen from the courts, and are mentioned by
elementary writers, to the effect, that the robbery must first be
proved *aliunde*, and then the bailee can prove the amount lost;
but the decided cases do not support this distinction, and the
same reasons which require the admission of the trustee's evi-
dence to prove the amount stolen, also apply with equal force
to require the admission of his testimony, as to the facts attend-
ing the loss or robbery.

The common case of the admission of the evidence of the
owner of goods under bailment, in cases of their loss by rob-
bery, in actions against innkeepers or common carriers, when,
from the nature of the case, no other evidence is attainable,
exhibits, in a strong light, the reason and necessity of the rule;
but in the present case, the peculiar confidence reposed by the
parties and the court in the trustee, gives him additional claims
to belief.

Of course, the testimony is subject to objections to its *credi-
bility*, and this is a sufficient safeguard against wrong.    The
tendency of courts, in late days, has been to discourage objec-
tions to the admissibility of testimony, and to allow a jury access
to every source of information.

*Wm. S. Glass*, for defendants in error.

BELL, J.    It appears from the record of this cause, that the
appellant, Seawell, was administering a trust estate for the
benefit of creditors, under the control of the District Court for
Calhoun county.

It appears that the court, from time to time, appointed an
auditor to examine the accounts of the trustee, and to report
upon them.    It appears, that at the January Term, 1857, of the
court, the trustee filed an account, and the auditor appointed

by the court, also filed a report; but whether the report of the auditor was upon the account then filed by the trustee, or had relation to other accounts previously filed, does not very distinctly appear from the record, and is not, perhaps, very material.

In his account filed at the January Term, 1857, the trustee, amongst other things, reported to the court, that a sum of money, amounting to about thirteen hundred and twenty dollars, belonging to the trust estate which he was administering, had been taken from his safe, between the 4th day of March, 1855, and the 29th day of September, of the same year, by some person to the trustee unknown. In other words, the trustee reported that the sum of thirteen hundred and twenty dollars had been stolen from him. He asked that he might be allowed a credit for that amount, less his commissions on the same. It does not appear that the auditor objected, at that time, to the allowance by the court of the credit claimed by the trustee, on account of the money alleged to have been stolen.

The trustee made affidavit that the money had been stolen from him, but there was no other evidence of the theft, and no other evidence that the money was at any time deposited in the safe from which the trustee said it had been stolen. The court made an order, approving the account of the trustee. At the next term of the court, the auditor, in a report then made to the court, remarked upon the allowance to the trustee of a credit for the amount alleged to have been stolen, and questioned the right of the trustee to have the credit allowed him. At the same time, the defendants in error, as creditors interested in the trust estate which the plaintiff in error was administering, came into court, and denied the right of the trustee to have the credit allowed him. They also denied the loss of the money, and prayed the court to compel the trustee to distribute the money amongst the creditors of the trust estate.

The court permitted an issue to be formed, and the trustee not being able to present to the court any evidence of the loss of the money, besides his own oath, the court decided that it was not competent for him to prove the loss of the money by his

own oath, and made a decree, charging the trustee with the amount alleged to have been stolen, and requiring him to pay out the same for the benefit of the creditors.

It is urged by the trustee, who is plaintiff in error, that the order of the court, at the January Term, 1857, approving his account, was conclusive of his right to the credit which he claimed ; and that it was error in the court to permit his account, at a future term, to be investigated, and to restate the same, thereby annulling the former order by which the account was approved. The trustee also insists, that the court erred in its judgment, that he was not competent to prove the loss of the money by his own oath.

We are of opinion, that the court did not err, in permitting the claim of the trustee to be allowed a credit for the money alleged to have been stolen, to be contested by the creditors of the trust estate. The proceedings of the court, in the administration of the trust, were, for the most part, *ex parte*. The court was exercising the powers of a court of chancery, and it was very proper to consider all orders passing the accounts of the trustee, as orders or judgments *nisi*, subject to be set aside upon future inquiry into the correctness of the accounts. It was competent for the court, in the administration of the trust, to proceed in such manner as best suited its own convenience, and the convenience of the agents who assisted the court in the administration of the trust, and above all, in such manner as would best attain the object to be accomplished, which was the fair and just administration of the trust estate for the benefit of the creditors.

We are also of opinion, that there was no error in the judgment of the court, that the trustee could not establish the fact of the loss of the money by his own testimony alone. There is a class of cases, in which a party who sustains a loss by theft or robbery, is permitted to testify to the extent of the loss. But in all these cases, a foundation must be first laid for the oath of the interested party. And when the foundation has been laid, there is a limitation upon the party's right to prove

the extent of his loss by his own oath.   An illustration of this class of cases is furnished by the case of Herman v. Drinkwater, 1 Greenl. Rep. 27.   In that case, a shipmaster had received a trunk on board his vessel, to be carried to another port.   On the way, he rifled the trunk of its contents.   The owner of the trunk, after proving the delivery of it to the shipmaster, and the fact that it had been rifled, was permitted to testify as to its contents.   But even in such a case, the party interested can only recover damages for the value of such articles as are ordinarily necessary for the convenience and use of a traveler.   (See Clark v. Spence, 10 Watts's Rep. 335.)

It is not very clearly settled, whether, in any case, the party's own oath will be received, as to the extent of his damages, until the theft or robbery, as the case may be, has been proved *aliunde*. We have not been able to find a case where the party's own oath was received, unsupported by other evidence, to prove both a loss and the extent of it.

In the case of trustees, the law on this subject is more clearly settled than in the case of bailments.   Mr. Hill, in his work on the law relating to trustees, (marginal page 573,) says,  "Where, "from necessity or convenience, a trustee is justified in keeping "any part of the trust property in his possession, and without "any negligence on his part, it is lost by robbery, he will not "be held responsible for the loss, but will be allowed the amount "in passing his accounts, and *this amount* may be proved by "the trustee's own affidavit, for it would frequently be difficult "to obtain any other proof."   The cases cited by the author, in support of this proposition, are Morley v. Morley, 2 Ch. Cas. 2; Knight v. Earl of Plymouth, 3 Atk. Rep. 480; and Jones v. Lewis, 2 Ves. Sr. Rep. 240.   It will be observed, that the author does not say that the affidavit of the trustee will be received to prove the robbery, and the extent of the loss.   And the cases cited only go to the extent of permitting the affidavit to be received in relation to the damages, after the loss or robbery has been proved *aliunde*.   The case of Morley v. Morley, 2 Ch. Cas. 2, was decided in the year 1678, in the reign of

Charles the Second. The defendant, in that case, was trustee for an infant, and received forty pounds in gold of the infant's money. The trustee was robbed, by his servant, of two hundred pounds of his own money, and the forty pounds belonging to the infant. The case shows, that it was proved *aliunde* that the trustee was robbed of money. The loss of the forty pounds was proved by the trustee's oath alone. The trustee was held not chargeable with the forty pounds.

The case of Knight v. Plymouth, 3 Atk. 480, was not a case of robbery. In that case, Knight was the receiver of Lord Plymouth's estate. He had in his hands seven hundred pounds and upwards in rents. Not thinking it safe to remit the money to London, he paid it to a tradesman, who, at the time, was in good credit, and took bills on London for the amount. The tradesman unexpectedly became bankrupt, and the bills not being paid, the money was lost. The receiver was held not liable.

In the case of Jones v. Lewis, 2 Ves. Sr. Rep. 240, the question of the admissibility of the party's own oath did not arise. In that case, the Lord Chancellor said, "If a trustee is robbed, that rob-"bery, properly proved, shall be a discharge, provided he has kept "the goods as he would keep his own." We have noticed these cases thus, because the reports of them are not generally within the reach of the members of the profession in this State; and as they are quoted by a popular author, in support of the general proposition that the trustee's affidavit will be received to prove the amount of a loss sustained by robbery, we have thought it proper to show, that the cases do not lay down the doctrine that the robbery itself, as well as the amount lost, may be proved by the trustee's own oath.

In the case of Clark v. Spence, 10 Watts's Rep. 355, it was said, that the party's own oath would not be received to prove the extent of a loss or the contents of a package, merely because no other evidence of the fact can be obtained. "For," said the court, "if a merchant, sending goods to his correspondent, "chooses to pack them himself, his neglect to furnish himself

"with the ordinary proof, is no reason for dispensing with the "rule of evidence which requires disinterested testimony." So it may be said in this case, that the trustee might have taken such precautions as would have enabled him to prove the robbery by other evidence than his own oath; and we do not think, that the rule of evidence which requires disinterested testimony, can be so much relaxed as to discharge the trustee from liability, under the circumstances of this case. Whatever relaxation of this rule has been recognized or permitted by the courts, has been, where there is something peculiar and extraordinary in the circumstances of the case, as was said in the case above referred to in 10 Watts.

That all the facts of this case may be understood, we think it proper to state that the trustee, Seawell, offered to prove by two witnesses, that he had informed them of the loss of the money, about September, 1855, when he alleges that he first discovered the loss. The trustee also states, in his affidavit, which accompanied his account rendered at the January Term, 1857, and which he again offered in evidence on the final trial, that he did not open the safe, in which the money was deposited, from the 4th day of March until the 29th day of September.

The judgment of the court below is affirmed.

Judgment affirmed.