MARY I. SULLIVAN *vs.* JOHN B. LLOYD & trustees.

Suffolk.   January 20, 1915. — May 20, 1915.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Spendthrift. Guardian. Probate Court,* Appeal. *Practice, Civil,* Appeal. *Marriage and Divorce.*

The brother of a spendthrift who brought the petition on which the decree of guardianship was made is a person aggrieved by a decree of the Probate Court terminating the guardianship of the spendthrift by accepting the resignation

of his guardian, and therefore under R. L. c. 162, § 9, such brother may appeal to the Supreme Judicial Court, thereby suspending the operation of the decree and leaving the spendthrift under guardianship.

*It seems* that the presumptive heirs and next of kin of the spendthrift also are persons aggrieved by such a decree and have a right of appeal, but it was not necessary to decide this in the present case.

Under R. L. c. 145, §§ 7–11, one under guardianship as a spendthrift cannot make a valid contract to marry.

CONTRACT against John Bross Lloyd of Winnetka in the State of Illinois for the breach of an alleged contract to marry the plaintiff, William B. Sprout of Brookline and James H. Flint of Weymouth being summoned by trustee process as trustees. Writ dated January 14, 1914.

Personal service was made upon the alleged trustees and service was attempted to be made upon the defendant by leaving a copy of the writ at the Hotel Charlesgate in Boston, alleged to be his last place of abode in this Commonwealth.

On January 24, 1914, Henry D. Lloyd, a brother of the defendant, filed an adverse claim, which he filed again after the entry of the case. On application of the plaintiff an order of court was made under which service was made upon the defendant by publication and by a registered letter which was received by him in Illinois.

In the Superior Court the case was heard by *Jenney*, J., on motions respectively to charge and to discharge the trustees and upon the petition of Henry D. Lloyd as adverse claimant.

It appeared that for some years before June 20, 1913, John B. Lloyd, the defendant, who was unmarried, had been a resident of Massachusetts; that on February 15, 1909, while such resident, he was placed under guardianship as a spendthrift by a decree of the Probate Court for Middlesex County upon a petition filed by his brother Demarest Lloyd; and that William B. Sprout and James H. Flint, the alleged trustees in the present action, were appointed his guardians; that before this appointment the defendant had on January 13, 1909, conveyed substantially all of his property in trust to Mr. Sprout and Mr. Flint; that on February 19, 1913, the guardians filed in the Probate Court their resignations, which were dated February 18, 1913, and were assented to only by the defendant, and a decree was entered by the Probate Court accepting the resignations on the same date; that the docket records of the

Probate Court did not show that any previous or subsequent notice of these resignations or any notice of the decree was given to any other person; that on March 18 and March 19, 1913, the defendant's brothers, including the original petitioner, Demarest Lloyd, filed claims of appeal from the decrees accepting the resignations, and entered their appeals in the Supreme Judicial Court on March 21, 1913, giving all proper notices; that on March 26, 1913, one of the defendant's brothers, William B. Lloyd, filed petitions in the Probate Court for Middlesex County for the appointment of a new guardian for John B. Lloyd as a spendthrift and for the appointment of a conservator; that on June 19, 1913, waivers of the appeals pending in the Supreme Judicial Court were filed; that on June 20, 1913, a decree was entered by the Supreme Judicial Court confirming the decree of the Probate Court accepting the resignations of the guardians; and that on the same day all parties waived their rights of appeal from this decree; that on June 19, 1913, the defendant executed a conveyance through one Halloran of all his property, including all of his interest in the property held by Mr. Sprout and Mr. Flint under the trust of January 13, 1909, to three trustees, namely, John B. Lloyd, William B. Lloyd and Henry D. Lloyd, being the defendant and two of his brothers; that the trust was accepted by all of the parties thereto, and that subsequently the conveyance was redelivered about June 26, 1913.

The defendant in answer to interrogatories testified that on April 28, 1913, he and the plaintiff mutually promised to marry and that on that day he presented her with an engagement ring; that June 25, 1913, was the day fixed for the wedding, and that on June 20, 1913, he wrote to the plaintiff a letter in which for the reasons there given he asked her to consider their engagement at an end.

The judge made an order for a decree that the claim of the adverse claimant be disallowed, and that William B. Sprout and James H. Flint, the alleged trustees of the defendant, be charged as such trustees for the sum of money disclosed by them in their answer, and, being of the opinion that the correctness of the order ought to be determined before any further proceedings in the Superior Court, reported the case to this court for such determination.

*E. F. McClennen,* (*J. J. Kaplan* with him,) for the adverse claimant.

*P. Nichols,* (*S. H. Hudson* with him,) for the plaintiff.

*F. B. Kendall,* for the alleged trustees, filed a brief stating that they relied on the brief and argument for the adverse claimant.

LORING, J. 1. The assignment to the new trustees, who are in effect the claimants here, antedates the attachment and must prevail unless it was void or voidable. The plaintiff has not contended that it is void. But she does contend that it is voidable as an assignment to hinder and delay creditors and that it can be avoided by her because she is a creditor. If the plaintiff is not a creditor, this attack upon the assignment fails and the assignment must prevail.

2. When the defendant promised to marry the plaintiff on April 28, 1913, he was under guardianship as a spendthrift. His status as a spendthrift would have come to an end when the resignation of his guardian was accepted by decree of the Probate Court made on February 19, 1913, had not an appeal been taken from that decree. The status of spendthrift does not continue after the person appointed the guardian of the spendthrift ceases to hold that office. *O'Donnell* v. *Smith,* 142 Mass. 505. *Allis* v. *Morton,* 4 Gray, 63, 64. *Harding* v. *Weld,* 128 Mass. 587, 591. *Willwerth* v. *Leonard,* 156 Mass. 277, 279. *Hill* v. *Arnold,* 199 Mass. 109, 110, 111.

But the operation of this decree was suspended by the appeal which was taken from it. The brother of the spendthrift, who brought the petition on which the decree of guardianship was made, was a person aggrieved within R. L. c. 162, § 9. It could not be held that this relative, who could bring a new petition to secure the appointment of a new guardian, is not a person aggrieved by the decree ending the former guardianship by accepting the first guardian's resignation of his office. It would seem that the appeal taken by him and his brothers was also well taken within R. L. c. 162, § 9, because they were the presumptive heirs and next of kin of the spendthrift. See *Lawless* v. *Reagan,* 128 Mass. 592, 593; *Pierce* v. *Gould,* 143 Mass. 234, 235. But upon that point it is not necessary to come to a decision. The appeal suspended the operation of the decree by force of R. L. c. 162, § 16. *Arnold*

v. *Sabin,* 4 Cush. 46.  *Smith* v. *Smith,* 175 Mass. 483.  *Tyndale* v. *Stanwood,* 186 Mass. 59; *S. C.* 190 Mass. 513.

3.  This brings us to the question of the power of a person under guardianship as a spendthrift to enter into a valid contract to marry.

The first statute in this Commonwealth providing for the appointment of a guardian of a spendthrift is St. 1783, c. 38, § 7. After authorizing the appointment of a guardian of one found to be a spendthrift in order that he might not become a charge upon the public or upon his family, that statute contains this provision: "And no sale or bargain of any real or personal estate, made by such person or persons, after the appointment of guardianship, as aforesaid, shall be held valid in law.  And the guardian or guardians that may be thus appointed, shall, in discharging the duties of their appointment, pursue the same method, and be under similar obligations for a faithful discharge of their trust, as guardians appointed for idiots, lunatics or for persons *non compos mentis.*"  If the matters declared by this statute to be invalid were to be taken to be the limit of the effect of the appointment of the guardian, it well might have been held that one under guardianship as a spendthrift could make a valid contract to marry.  But in *Manson* v. *Felton,* 13 Pick. 206, it was held that this clause of St. 1783, c. 38, § 7, was not to be taken to be the limit of the effect of the appointment of a guardian of a spendthrift.  The question in that case was whether a promise by the spendthrift to pay a debt contracted by him before the guardianship would take the case out of the operation of the statute of limitations.  It was argued that it would because the clause stated above did not cover that case.  It was held however that this clause was not to be taken to define the acts made invalid by appointment of a guardian of a spendthrift. It was held on the contrary "that by the appointment of a guardian to a spendthrift, by which the entire control over his whole estate and the administration and management of it are suspended, he becomes incompetent, by his acknowledgment or promise, to continue in force and revive a debt which would be otherwise barred by the statute of limitations."  See page 211. It was doubtless as a result of this decision that the clause in St. 1783, c. 38, § 7, set forth above, was not re-enacted in the Revised Statutes.  See Rev. Sts. c. 79, §§ 1, 16.

In spite of the concluding clause of St. 1783, c. 38, § 7, set forth above, it was held in *Boyden* v. *Boyden*, 5 Mass. 427, that guardians of spendthrifts had no control over the persons of their wards. Pursuant to that decision the commissioners for the codification which afterwards became the Revised Statutes, inserted a provision (Commissioners' Report, c. 79, § 17) which went no further than to provide that guardians of spendthrifts should have the care and management of all the estates of spendthrifts. But the Legislature in enacting the Revised Statutes made a change with respect to the control of guardians over the persons of spendthrifts and provided that: "Every guardian, so appointed for a spendthrift, shall have the care and custody of the person of the ward, and the management of all his estate." Rev. Sts. c. 79, § 16.

By the St. of 1818, c. 60, provision was made to prevent gifts, bargains, sales or transfers of real or personal estate while a petition for the appointment of a guardian over the respondent as a spendthrift was pending, on a copy of the complaint and the order of the judge of probate thereon being recorded in the registry of deeds. Some changes in the details of this provision were made by St. 1826, c. 63, § 1. That provision was re-enacted in Rev. Sts. c. 79, § 13, and in Gen. Sts. c. 109, § 10. In *Lynch* v. *Dodge*, 130 Mass. 458, no copy of the complaint and the order of the judge of probate had been filed in the registry of deeds. Under these circumstances it was contended in that case that the indorsement of a promissory note by a ward under guardianship as a spendthrift passed title to the note. It was held that it did not, and it was explained that the provision of Gen. Sts. c. 109, § 10 (which was the re-enactment of St. 1818, c. 60) was not a provision as to the invalidity of acts by a ward under guardianship as a spendthrift, but was a statute for the more limited purpose of preventing contracts, gifts, sales or transfers while the complaint was pending. In that connection Soule, J., speaking for this court, said: "The purpose [for which a spendthrift is put under guardianship] is to take away from him the power to expend and dispose of his estate, to the end that neither he nor his family shall become a public charge. The fact being established that he has the characteristics which constitute a spendthrift, he is, in the interest of the public welfare, put in person and property into the same position with those who are incompetent, by reason of mental weakness, to

manage their own affairs. The guardian of the spendthrift, like the guardian of an insane person, has the custody of the person of his ward and the management of all his estate. Gen. Sts. c. 109, §§ 9, 12. In order that the guardianship be of any practical value, it is essential that the ward be powerless to make contracts which shall bind him or his estate, and the consequence of the appointment of a guardian of a spendthrift is that, from the time of the appointment, the ward ceases to be *sui juris*, except so far as contracts for necessaries are concerned, and is unable otherwise to deal with any part of his estate." It should be noted in connection with this statement that the exception as to the power of the ward to make contracts for necessaries, originally created by Rev. Sts. c. 79, § 13, now R. L. c. 145, § 8, exists while the complaint is pending only.

In *Mason* v. *Mason*, 19 Pick. 506, a ward undertook to bring an action against his guardian for an assault committed on the ward by the guardian, and the court held that he could not do so. In delivering the opinion in that case, Dewey, J., said (page 508): "And the question is, therefore, shall the spendthrift be allowed to control and squander, if he pleases, the pecuniary damages he may be entitled to recover for his personal injuries, while every dollar of his property and the entire income of it, are locked up as against him . . . . If this cause of action had accrued with another person than the guardian, we think there would be no doubt that the action could be instituted only in the name of the ward by his guardian." The court then went on and decided that an action against the guardian stood on the same footing as an action against a third person, and that no action could be instituted without the guardian's consent. It was suggested in that case that an action could be brought by the ward after the guardian had ceased to hold that office.

It is apparent that the intention of the Legislature was that the guardian of a spendthrift should have the management of the estate of the ward in every particular and to the utmost limit. If a spendthrift without the consent of his guardian can make a valid contract to marry, he would be liable in damages if he afterwards should without cause commit a breach of that contract, and his property (the entire management of which has been put in the hands of the guardian) would be answerable for the breach of the

contract. On the other hand, if the other party to the contract should refuse to marry the spendthrift in such a case, and the contract was valid, it would follow that the spendthrift of his own motion could institute an action to recover damages without the consent of the guardian, a result not consistent with the decision of this court in *Mason* v. *Mason, ubi supra.*

The ability of one under guardianship as a spendthrift to enter into a valid contract to marry of necessity involves consequences which are not consistent with the provision of the statute giving to the guardian "the management of all his estate," as that provision has been construed by this court. In addition it hardly seems to be consistent with the provision that the guardian of a spendthrift "shall have the care and custody of the person of the ward." Marriage even of a man creates such new relations that it is hardly consistent with a third person's having the care and custody of his person. It was held in *Bartlett* v. *Cowles,* 15 Gray, 445, that marriage of a female minor brought the authority of her guardian to an end. This has now been changed by statute (R. L. c. 145, § 37), so that on the marriage of a female minor the guardian has the management of the ward's estate but not the custody of her person. Doubtless in many cases the marriage of a spendthrift would be a benefit to him. But it is not necessarily so. It would seem that that matter is one which it was the intention of the Legislature should be left to the judgment of the guardian. The marriage of one under guardianship as a spendthrift (see in that connection *Chace, petitioner,* 26 R. I. 351; *Sturgis* v. *Sturgis,* 51 Ore. 10) well may rest on considerations other than those which are decisive of the invalidity of an executory contract to marry.

In view of the history of the legislation which has resulted in R. L. c. 145, §§ 7–11, and the decisions which have been made by this court, we are of opinion that one under guardianship as a spendthrift cannot make a valid contract to marry.

4. The result is that the order disallowing the claim of the adverse claimant must be reversed and an order entered allowing the adverse claimant's claim and discharging the trustees. It is

*So ordered.*