HENRY E. BUTLER *vs.* WILLIAM E. BUTLER.

Middlesex.    June 19, 1916. — September 13, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Contract*, Implied. *Evidence*, Materiality, Of intent, Opinion. *Conservator. Practice, Civil*, Conduct of trial, Exceptions.

A married son lived in the same tenement with his father, who had suffered a paralytic shock and whose property was in the charge of a conservator appointed by the Probate Court in 1904 under R. L. c. 145, §§ 40, 41. The son daily and nightly rendered necessary services for his father and incurred expenses for his benefit, including payment for the services of a housekeeper and a nurse for six months before his father's death. He never spoke to his father nor to any other person about expecting pay for what he was doing for his father until after his father's death and he never kept any book account or memorandum of the payments and services. Upon the father's death the son was appointed one of the administrators of his estate and filed in the Probate Court a petition asking to be allowed individually payment for his services and expenses. The father's only property during the period in question was the building in which his tenement was and the land on which it stood. The income from the land and building, which were subject to a mortgage, was not sufficient to pay the interest on the mortgage and for water rates, taxes, repairs and insurance, but the equity of the property during all the time was worth at least $3,000. The petitioner testified that he did not render the services as a gratuity to his father. There was evidence of facts and circumstances warranting a finding that the father in his unspoken acceptance of the benefits conferred on him understood that his son expected to be paid for his services and disbursements and that the father re-

ceived them with that understanding and with an intent that there should be pecuniary recompense. Subject to an exception by the respondent, the petitioner was asked, "At the last part of your father's sickness, did your mother get sick also?" and answered in the affirmative. *Held,* that the question and answer were admissible to show the circumstances under which the services were rendered and the necessity for them.

In the same case the petitioner, after having testified without objection that he did not render the services as a gratuity to his father, was asked, subject to the respondent's exception, "Explain what your intention was in furnishing those?" and answered, "Of course I realized there was estate there." *Held,* that the question and answer were admissible, the purpose and intent of the petitioner at the time the services were rendered and the expenses were incurred being material.

In the same case it was *held* that the petitioner rightly was allowed to give his opinion as to the value of the support furnished and of the services rendered. Moreover the respondent admitted that the amount claimed by the petitioner was reasonable, so that, had this testimony been admitted erroneously, the respondent would not have been harmed by it.

In the same case, the presiding judge, subject to the respondent's exception, instructed the jury "that the petitioner could not recover under the circumstances disclosed by the evidence unless he showed that at the time he rendered the services and incurred the expenses for which he sought to recover in this proceeding, he expected to be paid, and rendered them on the credit of his father, but that it was not necessary that this understanding should be communicated to the father." *Held,* that this instruction was correct, the reference to the father meaning that the agreement need not have been an express one but might be implied in fact from the circumstances, and that, if the respondent thought that the instruction as given did not bring out as clearly as the respondent desired the necessity of establishing the understanding of the father as well as that of the petitioner, he should have called the attention of the judge specifically to this omission or want of emphasis.

In the same case it was *held* that the petitioner in order to recover was not required to prove that the conservator refused to support the intestate properly and to devote the proceeds of his property to his support or to prove that after such refusal the petitioner rendered the services and demanded payment from the conservator and that such payment was refused.

In the same case it was *held* that the fact that the intestate was under a conservatorship during all the time involved in the controversy did not raise a conclusive presumption that he was incapable of making a contract.

The appointment of a conservator in 1904 under R. L. c. 145, §§ 40, 41, and his continuance in charge of the property of an aged person until the death of such aged person in 1914 do not create a necessary implication that the person under such conservatorship was incapable during that time of making a valid contract.

PIERCE, J.   This is an appeal from a decree of the Probate Court upon the petition of Henry E. Butler, one of the administrators of the estate of Aaron Butler, deceased, to be allowed in his private capacity a claim against the estate of his intestate

for board, care, etc., amounting to $1,560. In the Supreme Judicial Court two issues were framed for a jury and were sent to the Superior Court for trial. The jury in response to the first question answered that the petitioner had a valid claim against the estate of Aaron Butler for $1,560, and thereupon the second issue became immaterial.*

The intestate suffered a paralytic shock in 1903; in 1904 one of his sons, who afterwards was co-administrator with the plaintiff, was appointed conservator by the Probate Court under the provisions of R. L. c. 145, §§ 40, 41,† and continued to act under his appointment until the intestate died in 1914.

The intestate from the time of his paralytic shock in 1903 until his death in 1914 was speechless and partly paralyzed; he was not confined to his bed and there was no evidence that he was not mentally sound during the entire period, although there was testimony that he was "slowed down" by the shock.

For many years he had conducted a variety store in a four-story brick building which he owned. In 1904 the conservator sold the entire stock of merchandise contained in the store to the petitioner, and thereafter until the death of the intestate collected rent for the use of the store from the petitioner. The intestate had no other personal property, and the income from the land and building thereon was not sufficient to pay the interest as it became due on a mortgage of the property, the water rates, taxes, repairs and insurance. There was at all times an equity of at least $3,000, but there was no other property or income immediately available for the support of the intestate. He had lived on the property for many years and was greatly attached to it. His family consisted of a wife and six children.

---

* The issues were tried before *Brown*, J. The first issue was as follows: "1. Has the petitioner a valid claim against the estate of Aaron Butler for fifteen hundred and sixty dollars ($1,560.00) as specified in his petition?" The second issue was as follows: "2. If the first issue is answered in the negative, has the petitioner a valid claim against said estate in any amount? If so, in what amount?" The jury answered the first question in the affirmative, rendering the second immaterial. The respondent alleged exceptions, raising the questions that are described in the opinion.

† That statute has been amended and supplemented by the following statutes: Sts. 1903, c. 96; 1905, c. 127; 1907, c. 169, § 3; 1908, cc. 116, 505; 1909, c. 256; 1910, c. 95; 1911, c. 206; 1915, c. 23; c. 151, § 6.

The petitioner was born on the premises, and he and his father had from the date of his birth to the time of his father's death lived in the same tenement, eaten at the same table and conducted themselves in all respects as members of the same family. He was married, and a minor daughter lived with him during some of the period for which he sought compensation for his services. Before 1903 he had worked in the store for his father for many years.

The petitioner was continuously employed in his business, was not always assisted by a clerk, and from time to time ran upstairs whenever he was called by his mother (who was unable to take all the care of her husband), for the purpose of assisting in moving and caring for his father. He provided a part of the provisions and other necessaries consumed by his parents, paid for part of other necessary expenses, and paid for the services of a house-keeper and nurse for six months before the death of his father. During the entire period covered by his claim he daily and nightly rendered necessary services which interfered with the conduct of his business. He testified "that he never spoke to any one, neither the father, mother or any other person about expecting pay for what he was doing for his father and that he had no talk with any person until after the death of the father about the support and services rendered by him to the father, and that he never kept any book account or written memorandum of any sort of the payments and services for which he sought to recover."

During the introduction of testimony the petitioner was asked, and answered in the affirmative, the question, "At the last part of your father's sickness, did your mother get sick also?" The respondent objected to the question and excepted to the reception of the answer. He now argues that the question was immaterial. Manifestly this is not so. The petitioner, not claiming under an express contract, was entitled to show all the circumstances and all facts which in themselves or inferentially tended to show the necessity that services be rendered, the probability that they were rendered by the petitioner, and the nature and value of them. *Guild* v. *Guild*, 15 Pick. 129. *Kirchgassner* v. *Rodick*, 170 Mass. 543. *Johnson* v. *Kimball*, 172 Mass. 398. *Marple* v. *Morse*, 180 Mass. 508. These circumstances necessarily and naturally included a view of the intimacies of the home and a consideration of the

relations, abilities and dispositions of its inmates. *Guild* v. *Guild, supra.*

Without objection or exception the petitioner was permitted to testify that he did not render the services as a gratuity to his father. He was then asked, "Explain what your intention was in furnishing those?" to which question he replied, "Of course I realized there was estate there." There then ensued between the presiding judge and the counsel the following colloquy: The judge — "He can tell what the intent was." Counsel for the respondent — "The issue is narrower than that; it is not what he thought, it is whether or not there was a contract; I think that is the issue here." The judge — "Express contract?" Counsel for the respondent — "Substantially so, your honor." The judge — "Oh, no." Counsel for the petitioner — "I ask to have the question allowed." Counsel for the respondent — "Your honor, please save my exception." The judge — "Yes."

The ruling was clearly right. The state of mind, that is, the purpose and intent of the petitioner at the time when the services were rendered to, and the money was expended on behalf of, the father, was material upon the issue whether such services and expenditures were made and received as a gift to the father, or whether both parties at the time the services were performed and the moneys were paid contemplated or intended pecuniary recompense. *Nickerson* v. *Spindell*, 164 Mass. 25, 27. The petitioner rightly was allowed to give his opinion as to the value of the support furnished and of the services rendered. *Kendall* v. *May*, 10 Allen, 59. Were it otherwise the respondent suffered no harm inasmuch as he expressly admits that the amount claimed was reasonable.

At the request of the respondent, the presiding judge ruled and instructed the jury "that the presumption in a case like this was that the services were rendered and expenses incurred gratuitously and that the burden was upon the petitioner to rebut that presumption by evidence."

In response to the seventh request that he should rule that "under the circumstances disclosed by the evidence in this case, the petitioner cannot recover unless he shows that at the time he rendered the services and incurred the expenses for which he makes claim, it was understood by both himself and his father that he

should be paid for them," the presiding judge ruled and instructed the jury "that the petitioner could not recover under the circumstances disclosed by the evidence unless he showed that at the time he rendered the services and incurred the expenses for which he sought to recover in this proceeding, he expected to be paid, and rendered them on the credit of his father, but that it was not necessary that this understanding should be communicated to the father." The respondent now contends that the instructions given "were insufficient because they left completely out of the account the state of mind of the father and made the liability depend upon that of the son alone, and allowed contractual liability to be predicated upon an undisclosed state of mind of one party with no evidence to show any meeting of the minds."

This is, in effect, a contention that under the circumstances and facts of this case the petitioner must prove an agreement in fact between himself and his father, an express contract, that he should be paid for the services rendered and remunerated for the expenses incurred, and is, in substance, the sixth request for a ruling which was refused, an exception taken thereto, and which is not argued in the brief. This criticism also disregards and overlooks the fact that the crucial words in the request are "understood by both himself and his father" and are not the words "under an agreement" as formulated in the requests numbered 5 and 6. It is plain that the presiding judge in stating that there could be no recovery unless the petitioner "expected to be paid and rendered them on the credit of his father," thought the words used were a forceful and emphatic statement of the principle of law contended for. It is equally clear that the respondent by the form of his request and the presiding judge by the words of his instruction intended to mark the distinction between an express agreement and an agreement implied in fact evidenced by circumstances, by the acts of the parties, and not by their verbal or written words. See *Spencer* v. *Spencer*, 181 Mass. 471; *McKenna* v. *Twombly*, 206 Mass. 62.

It is evident that the presiding judge construed the request to call for an instruction in substance that there could be no recovery unless under all the circumstances the father understood and the son understood at the time the services were rendered they were to be paid for. If the instructions as given did not bring out as

clearly and forcibly as the respondent desired the necessity of establishing the understanding of the father, as well as that of the petitioner, the attention of the judge should have been particularly and specifically called to the omission or want of color, and an opportunity thus given to the judge to supply, to make clear and to emphasize the respondent's contention.

The facts and circumstances fully warranted the jury in finding that the father, by an unspoken assent to the benefits conferred on him, understood that his son expected to be paid for his services and disbursements, and that he received them with that understanding, and with an intent that there should be pecuniary recompense.

We shall consider the exceptions to the refusal of the presiding judge to receive a duly certified copy of the record of the Probate Court of the appointment of the conservator "as conclusive evidence that the intestate was during all the time involved in the suit incapable of making a contract of the kind in suit and as a conclusive bar to the claims of the petitioner," in connection with the respondent's exceptions to the refusal of the judge to rule in accordance with the requests numbered 2, 3 and 8.* These several requests for rulings upon the conclusive effect of the record of the appointment of the conservator, upon the necessity that

---

* These requests were as follows:

"2. It appearing that Aaron Butler, the father of both parties in this case, was under conservatorship during all the time within which the petitioner rendered the alleged services and was to the expense for which he seeks to recover in this proceeding, in order to recover a verdict, the petitioner must prove that the conservator refused to properly support said Aaron Butler and devote the proceeds of his property to his support and that after such refusal, the petitioner rendered the services and incurred the expense for which he seeks to recover.

"3. In order to recover in this case, the burden is upon the petitioner of proving: First, that the conservator of Aaron Butler refused properly to support him. Second: That the said Aaron Butler was actually in need of the services rendered and the disbursements made by the petitioner. Third: That after such refusal, the petitioner rendered the services for which he sues and that he has demanded payment from the conservator and such payment has been refused."

"8. It appearing from the undisputed evidence that Aaron Butler was under a conservatorship during all the time involved in this controversy, he is conclusively presumed to be incapable of making a contract."

any claim should have been presented to and refused recognition and payment by the conservator, and of the further necessity of proof that the intestate, through the neglect or default of the conservator, stood in actual need of the services and disbursements when made by the petitioner, in substance, are founded upon an assumption that the legal effect of the appointment of the conservator during the period of his services was to suspend the right of the intestate to make contracts as well as to deprive him of the possession, use and management of his property. Such a result is not within the express terms of the statute providing for the appointment of a conservator, and does not follow, as it does in the case of guardianship, by necessary implication as a consequence of the powers granted. See *Jones* v. *Maguire,* 221 Mass. 315; *Sullivan* v. *Lloyd,* 221 Mass. 108; and St. 1915, c. 23.* The judge rightly refused to make and to give the requested rulings.

The request to rule that "the settlement of the conservator's account . . . with the full knowledge and consent of the petitioner is a complete bar against the present claim" was properly refused, and is not argued in the respondent's brief.

We have considered all the exceptions and find no reversible error.

*Exceptions overruled.*

The case was submitted on briefs.

*J. P. Carney & H. W. Blake,* for the respondent.

*G. M. Poland & L. P. Jordan,* for the petitioner.

---

* The intestate died in 1914, so that the services were rendered before the passage of this statute.