HENRY F. WAITT *vs.* WALTER I. BADGER, guardian
(and three other cases[1]).

Plymouth. March 6, 1945. — March 30, 1945.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Spendthrift. Guardian*, Of spendthrift, Temporary guardian, Guardian ad litem. *Attorney at Law. Probate Court*, Jurisdiction, Appeal.

Counsel, who, on behalf of a next friend of a spendthrift, had entered an appeal from a decree respecting the guardianship, thereby acquired no authority to appeal in the name and behalf of the spendthrift also.

---

[1] The three other cases are, E. Max Gladstone *vs.* Viola M. Waitt & another; Henry F. Waitt, Junior, & another *vs.* Henry F. Waitt & others; Arthur W. Blakemore *vs.* Henry F. Waitt.

A spendthrift under guardianship is incapable of contracting with an attorney for his services.

One of two guardians of a spendthrift, upon the resignation of his co-guardian, had a right to appeal in the name of the spendthrift from a decree appointing a temporary guardian and also from a decree appointing a permanent guardian to serve with him.

An appointment of a temporary guardian of a spendthrift following the resignation of one of two permanent guardians, even if authorized under G. L. (Ter. Ed.) c. 201, § 14, as amended by St. 1941, c. 194, § 16, could only be made if necessity required it; and where the management of the remaining permanent guardian was not impugned, restraint was in full force, and no hostility on his part toward the spendthrift and the members of his family appeared, no such necessity existed, and a decree making the appointment of a temporary guardian was reversed.

Appointment of one as guardian ad litem and next friend for the minor children of a spendthrift in a proceeding for revocation of a decree appointing two guardians of the spendthrift gave the guardian ad litem no authority to act in that capacity in petitioning for the appointment of a temporary guardian or of a permanent coguardian upon the resignation of one of the guardians.

Evidence of the conduct of one of two guardians of a spendthrift who was serving alone after the resignation of his coguardian, of the remaining guardian's relations with the spendthrift and his family, and of discord likely to result from the appointment of a certain person as coguardian to serve with the remaining guardian, showed to be clearly wrong findings by a judge of probate on which he based a decree appointing such person as coguardian, and the decree was reversed.

There is ample power in the Probate Courts to provide protection for the family of a spendthrift and the public if a guardian of the spendthrift, appointed in a Probate Court of the Commonwealth, should cease to be such, even if the spendthrift were then residing outside the Commonwealth or in a county other than that in which the retiring guardian had been appointed.

PROCEEDINGS in the Probate Court for the county of Plymouth relating to spendthrift guardianship of Henry F. Waitt.

Hearings were by Campbell, J.

S. R. Wrightington & G. W. Abele, (G. E. Roewer with them,) for Henry F. Waitt.

G. Newhall, (J. J. Geogan & W. J. MacDonald with him,) for Badger, guardian.

A. S. Allen, for Gladstone, guardian ad litem for Henry F. Waitt, and another.

A. W. Blakemore, pro se (E. M. Gladstone with him).

DOLAN, J. These are four cases that come before us on

appeals from certain decrees entered in the Probate Court for the county of Plymouth. All of them are concerned with the affairs of Henry F. Waitt under guardianship as a spendthrift, other aspects of which have also been dealt with by this court before in three cases. See *Harvey* v. *Waitt*, 312 Mass. 333; *Waitt* v. *Harvey*, 312 Mass. 384. In the first of the two cases decided in *Waitt* v. *Harvey*, 312 Mass. 384, the facts relative to the property interests of the ward and the circumstances attendant upon the inception of the litigation concerning his affairs following the death of his father on November 11, 1940, are set forth (pages 388–391). They need not be repeated here.

## THE FIRST AND SECOND CASES.

The first case before us is a petition by Viola M. Waitt, as wife and next friend of Henry F. Waitt, praying that the decree of the Probate Court dated June 18, 1928, appointing George Stanley Harvey, Esquire (now deceased), and Walter I. Badger, Esquire, as guardians of Henry as a spendthrift be vacated. This petition was filed on May 25, 1942. After hearing, the petition was dismissed by the judge by decree dated April 26, 1944, and the petitioner appealed as wife and next friend of the ward. An appeal was also taken in the name of the ward by attorneys purporting to represent him. While this proceeding was pending before the court, E. Max Gladstone, Esquire, who had been appointed guardian ad litem to represent the interests of the two minor children of the ward and Mrs. Waitt therein, filed a petition that Mrs. Waitt be removed as next friend of the ward, and that a disinterested party be appointed to act as next friend of the ward. After hearing, the acting judge of probate, hereinafter referred to as the judge, entered decrees dated April 26, 1944, upon that petition and a similar one filed by the legal guardian of Virginia, a daughter of the ward by a prior marriage, that Mrs. Waitt "be . . . removed from acting as 'next friend' for the spendthrift . . . in all matters pending before said court and . . . prohibited from acting in . . . [that] capacity . . . in this court without the permission of said court so to act." Mrs. Waitt appealed

from these decrees, and an appeal was filed therefrom in the name of the ward by attorneys who had been counsel for Mrs. Waitt as the petitioner, as wife and next friend of the ward, for revocation of the decree appointing the guardians. These appeals from the decrees removing Mrs. Waitt as next friend come before us on a separate record, denominated as a separate case. The proceeding for the removal of Mrs. Waitt as next friend was essentially a part of the first case now before us and was purely interlocutory in its character. We deal with it together with the first case. For reasons that will follow, it is unnecessary to consider the propriety of removing Mrs. Waitt, the petitioner as next friend in the main petition, at the instance of persons who were opposed to its allowance. It may be observed, however, that the decrees removing Mrs. Waitt as next friend were nugatory in effect upon the main proceeding, the hearing of which had been concluded and in which final decree was entered the same day (April 26, 1944) as that on which the decrees were entered removing her as next friend. It thus appears that she had been permitted to prosecute the petition for vacation of the decree appointing the guardians to final conclusion through counsel who represented her as next friend. When the first and second cases now being discussed came before us, counsel who had been acting for Mrs. Waitt as next friend of the ward in all the proceedings which have heretofore come before us, and those now before us, advised us that Mrs. Waitt had discharged them and that she no longer desired that any of her appeals be prosecuted. A motion was filed by the remaining legal guardian of the ward that the appeals in these cases be dismissed. Mrs. Waitt was called and defaulted. The counsel who represented her contend, however, that they are entitled to prosecute the appeals taken by them in the name of the ward as his attorneys. We do not concur in this contention. The ward was incapable as matter of law of contracting with them for their services as his attorneys. This they apparently recognized since in all the proceedings brought in his behalf his wife was the moving party as such and as next friend. And it is settled that, in order that the guardianship of a spend-

thrift be of any practical value, "it is essential that the ward be powerless to make contracts which shall bind him or his estate, and the consequence of the appointment of a guardian of a spendthrift is that, from the time of the appointment, the ward ceases to be sui juris, except so far as contracts for necessaries are concerned, and is unable otherwise to deal with any part of his estate." *Lynch* v. *Dodge,* 130 Mass. 458, 459. *Sullivan* v. *Lloyd,* 221 Mass. 108, 114. It follows that the appeals from the interlocutory decrees and the final decree in the proceedings just before discussed must be dismissed. We are of opinion, however, that it is not inappropriate to say that we discover no error in the action of the judge in dismissing the petition for vacation of the decree appointing the guardians. We have examined the evidence under the familiar rule and the report of material facts made by the judge relative to the subject matter of the appeals and are of opinion that it cannot be said properly that the conclusions of the judge, that the ward was domiciled in Plymouth County when the guardians were appointed by decree of the Probate Court for that county and that that court had jurisdiction of the subject matter, are plainly wrong. It follows that the decree dismissing the petition must stand.

The entry in the first case and in the second case will be

*Appeals dismissed.*

### THE THIRD CASE.

This case comes before us on appeals from a decree entered by the acting judge of probate, hereinafter referred to as the judge, appointing Golda R. Walters, an attorney at law, as temporary guardian of the ward as a spendthrift, and from the final decree entered by the same judge appointing Mrs. Walters as permanent guardian of the ward to serve with his legal guardian, Mr. Badger, in place of Mr. Harvey whose resignation as coguardian had been accepted by the Probate Court on May 31, 1944, and who had deceased prior to the hearing of the petition for appointment of a coguardian. The petition for the appointment of Arthur W. Blakemore, Esquire, as coguardian was

filed on July 10, 1944, by E. Max Gladstone, Esquire, who described himself as guardian ad litem and next friend of Henry F. Waitt, Junior, and Royal N. Waitt, who were the minor children of the ward by his present wife, Viola. On July 10, on the petition of Mr. Gladstone in that alleged capacity praying for the appointment of Mr. Blakemore, one of his former counsel, as temporary guardian of the ward, the judge without notice entered a decree appointing Golda R. Walters as temporary guardian of the ward. Mrs. Walters had entered her appearance as counsel for Mr. Gladstone as guardian ad litem on March 10, 1944, Mr. Blakemore having withdrawn his appearance for Mr. Gladstone on March 8. Subsequently Mrs. Walters acted as counsel for Mr. Gladstone in the matter of the second case disposed of above. On July 14 a petition to revoke the appointment of the temporary guardian was filed in the name of the ward by attorneys purporting to represent him. On the same day a similar petition was filed by Mr. Badger, the guardian of the ward. On July 14 appeals from that decree were entered by Viola individually and in the name of her minor children, Henry and Royal, as their guardian, and in the name of the ward by attorneys purporting to represent him. An appeal was also filed by Mr. Badger as legal guardian in behalf of the ward. On September 22 the judge continued the petitions for revocation of the decree appointing Golda R. Walters as temporary guardian of the ward to await the determination by this court of the appeals therefrom. On August 10 Mr. Gladstone was granted authority to retain counsel in the matter of these appeals. This authority was granted by the judge of probate for Plymouth County. On August 28 G. D. Hall, Esquire, was appointed guardian ad litem for the ward in the matter of the petition for the appointment of a coguardian. A hearing on that petition was had before the judge on September 22, 1944. On the same day the judge entered a decree appointing Mrs. Walters as coguardian of the ward. Appeals therefrom were taken by Mr. Badger, the legal guardian, in the name of the ward, by Virginia by her legal guardian, by Viola, the wife of

the ward, and in the name of the ward by attorneys pur-
porting to represent him. Although G. D. Hall, Esquire,
appears to have been appointed guardian ad litem on
August 28, 1944, to represent the ward in the matter of
the petition for the appointment of a coguardian, neverthe-
less an examination of the evidence discloses that he took
no part in the hearing of that petition other than to report
orally, upon being called upon by the judge, recommending
that a coguardian be appointed to succeed Mr. Harvey and
that the guardianship be continued in Plymouth County
and that it would be against the best interests of the ward,
his wife and children if the guardianship were taken from
the jurisdiction of the Probate Court where it has been
handled for the past fifteen or sixteen years advantageously
for the ward's interest. It further appears that throughout
the hearing counsel for Mrs. Waitt and counsel for Mr.
Badger represented them in opposition to the allowance of
the petition.

The evidence is reported and the judge made a report of
the material facts found by him. Under the familiar rule
it is our duty to examine the evidence and to decide the
case according to our own judgment giving due weight to
the findings of the judge which will not be reversed unless
plainly wrong.

At the outset we dispose of the appeals of Mrs. Waitt,
and that taken in the name of the ward by attorneys pur-
porting to represent him, from the decree appointing the
temporary guardian. When the case now being considered
by us was argued before us, we were advised as in the first
case and second case, disposed of above, that Mrs. Waitt
had discharged her attorneys and abandoned the prosecu-
tion of her appeals in all of the proceedings before us, and
she was called and defaulted. It follows that her appeals
must be dismissed. In like manner and for the reasons set
forth in the determination of the first and second cases,
the appeal taken in the name of the ward by attorneys
purporting to represent him must be dismissed. The ap-
peal of Mr. Badger, the legal guardian, in the name of the
ward, from the decree appointing the temporary guardian

remains to be considered. We do not concur in the view expressed by the judge at the hearing of the petitions for revocation that Mr. Badger had no standing to appeal in behalf of the ward from the decree appointing the temporary guardian. We are of opinion that he did have a right to appeal from that decree. General Laws (Ter. Ed.) c. 201, § 14, as amended by St. 1941, c. 194, § 16, relative to the appointment of temporary guardians, provides that, if the Probate Court finds that the welfare of a spendthrift requires the immediate appointment of a temporary guardian of his person and estate, it may make such an appointment with or without notice, and that the temporary guardian "may proceed and continue in the execution of his duties, notwithstanding an appeal from the decree appointing him, until it is otherwise ordered by the supreme judicial court, or until the appointment of a permanent guardian, or until the trust is otherwise legally terminated." Without deciding or intimating that a temporary guardian could not be appointed in any case where there was a permanent guardian, we are of opinion that in the present case the evidence would not support a conclusion that there was any immediate need for the appointment of a temporary guardian of the property and person of the ward to serve with the permanent guardian, Mr. Badger, whose management of the property of the ward has not been impugned. In construing the governing statute it has been held that such an appointment is founded on necessity and limited to the time necessary to determine whether a permanent guardian should be appointed. *Bumpus* v. *French,* 179 Mass. 131. And in *Gardiner* v. *Jardine,* 245 Mass. 274, 277, the court, in holding that a stranger may petition for the appointment of a temporary guardian if, acting in good faith, he believes that the welfare of a minor, insane person or spendthrift requires that a temporary restraint should be immediately placed upon such person or his property, laid stress upon the fact that the restraint upon the ward's power is limited to the time necessary for the appointment of a permanent guardian. In the present case it is manifest that there was no need of temporary

restraint, permanent restraint being in full force. We are
not required to find abuse of discretion by the judge in
making the appointment of the temporary guardian. Upon
the appeals before us all questions of law, fact and discre-
tion are open, and we may exercise our own discretion. So
doing, we are of opinion that the appointment of the tempo-
rary guardian was not founded upon necessity and that the
decree of appointment should be reversed. What we have
said with reference to the appeals taken from the decree
appointing the temporary guardian by Mrs. Waitt and in
the name of the ward by counsel purporting to represent
the ward applies also to their appeals from the decree ap-
pointing the coguardian. In addition to these appeals and
that of the ward by his legal guardian, Mr. Badger, an
appeal was also taken by the minor daughter of the ward,
Virginia, by her legal guardian. No contention is made
that Virginia had no standing to appeal therefrom, and we
are of opinion that the legal guardian of the ward, Mr.
Badger, had standing to appeal therefrom in the name of
the ward. He had been appointed legal guardian of the
ward with Mr. Harvey in 1928 at the request of the father
of the ward, after the removal of one Kokerda, a stranger
to the family of the ward and to the founder of the trusts
under which the property of the ward was derived. See
*Waitt* v. *Harvey*, 312 Mass. 384, 388–390. Mr. Badger was
not an intruder. There is nothing in the record of any of
the cases affecting the ward's interest to show any hostility
on the part of Mr. Badger toward the ward or the members
of his family, and nothing to show any complaint of his
management of the property of the ward, or of his personal
attitude toward the ward and the members of his family
or their representatives. The opposition of Mr. Badger to
the discharge of his ward from guardianship was sustained
by the Probate Court in proceedings to that end, which
were disposed of shortly before the petition for the revoca-
tion of the decree appointing the guardians of the ward
was filed. That opposition had the approval of the daugh-
ter of the ward through her legal guardian, and the wife of
the ward, who initiated the proceeding for his discharge

and that for the revocation of the decree appointing the guardians, now appears no longer willing to pursue the litigation. So far as appears, Mr. Gladstone in bringing the petition for the appointment of one of his counsel, Mr. Blakemore, as coguardian in the first instance nominated himself as the guardian ad litem and next friend of the two minor children of the ward and his wife, Viola, who were under guardianship of their mother by decree of the Kennebec Probate Court in the State of Maine (see *Appeal of Waitt,* 140 Maine, 109) where they reside with their parents, and also by virtue of an appointment decreed by the Probate Court for the county of Middlesex. He had no commission from these minor children of the ages of eleven and six years, or from their mother, and the ward himself could not authorize him to act for the children. He had no mandate from Virginia, the other minor child of the ward, whose legal guardian opposed the petition in her behalf. His appointment as guardian ad litem and next friend for the minor sons of the ward and Mrs. Waitt in the matter of the petition for revocation of the decree appointing Mr. Harvey and Mr. Badger as guardians of the ward conferred no authority upon him to act as such except in that proceeding. See *Appeal of Waitt,* 140 Maine, 109, 115, and cases cited; *Matter of Schrier,* 157 Misc. (N. Y.) 310, 311–312; *Richter* v. *Estate of Leiby,* 107 Wis. 404, 406–407; *King* v. *Emmons,* 283 Mich. 116. In these circumstances we are of opinion that the legal guardian of the ward was entitled to object in behalf of the ward to the intrusion of a stranger into the guardianship at the instance of another stranger as unnecessary and wasteful, and to appeal in behalf of the ward from the decree appointing Mrs. Walters as coguardian.

The hearing of the petition for the appointment of the coguardian consisted for the most part of statements by counsel for Mr. Gladstone, other than the counsel for him before mentioned, to the effect that, by reason of the fact that after a hearing on June 21, 1944, the guardian of the ward had withdrawn certain deposits of moneys of the ward from Plymouth County banks, it was apparent that

somebody wanted to get rid of the jurisdiction of the Probate Court for the county of Plymouth and that, unless the judge appointed a coguardian, that scheme might be carried out. There was a great deal of discussion between the judge and counsel for both sides. There was no agreement between counsel as to statements of alleged facts made by counsel for one party or another. Compare *Assessors of Boston* v. *World Wide Broadcasting Foundation of Massachusetts, Inc.* 317 Mass. 598, 602. The only evidence received was that given by Mr. Badger who testified that deposits of moneys of the ward had been made in two banks in Plymouth County but were withdrawn following a hearing in the Probate Court on June 21, 1944; that an attempt had been made at the instance of the judge and that of a judge of probate for Middlesex County to put an end to the litigation over the affairs of the ward; that to that end many conferences were held; that it was proposed at first that a trust be established for the ward of which Mr. Abele, one of counsel for the wife of the ward throughout all the phases of litigation, was to be trustee; that that was not acceptable to some of the parties, and was not agreeable to the judge; that finally a trust agreement was drawn under which Mr. Abele and a trust company were to be trustees for the ward; that the settlement contemplated the payment of the guardianship funds to those proposed cotrustees and that upon the consummation of the arrangement he, Mr. Badger, was to resign. Mr. Badger further testified that that was the reason for the withdrawal of the deposits from the Plymouth County banks, that he had no intention of resigning as guardian unless and until the approval of the proposed agreement was received from the judge and had no intention of resigning at the present time "unless and until the entire matter could be settled, unless your Honor tells me you think I should." The judge replied, "I won't say that." In reply to suggestions by the judge to the effect that Mr. Badger was ready "to throw up everything" if his accounts were allowed and to consent to the allowance of $20,000 fees, regardless of the welfare of the ward, Mr. Badger testified

that he had consistently refused to pay any fees except on order of the court. After much further discussion during which Mr. Badger testified reiterating that he had no intention of resigning until the litigation was "cleaned up," and further testimony of Mr. Badger on cross-examination substantially to the same effect as that given by him in the direct examination, the hearing was concluded and on the same day the judge entered the decree appointing Mrs. Walters as coguardian of the ward.

The judge incorporated in his report of material facts the material facts found by him with respect to the petitions to revoke the decree appointing the temporary guardian. He found the facts relative to the attempted settlement of the litigation which have already been outlined; that Mr. Badger had stated to him at prior conferences that he desired to resign and have his accounts allowed in Plymouth and Middlesex counties (as trustee under the will of the ward's grandmother); that following a hearing before the judge on June 21, 1944, Mr. Badger had withdrawn funds of the estate of the guardian from two banks in Plymouth County; that this was done in "preparation of ultimately ousting the court of its jurisdiction"; that Mr. Badger had stated to one of the judges of probate for the county of Middlesex that he would be on duty in the State Guard in July, 1944, and his absence would leave no active guardian to function during that period; and that it was "stated" that if Mr. Badger's death should occur during maneuvers or by natural causes the guardianship would terminate by operation of law allowing the estate to come into the hands of the spendthrift without adequate protection for him or his family. The judge further found that it was for the best interests of the ward and his family that the guardianship be continued in Plymouth County and that the appointment of a temporary guardian was necessary to protect the interests of the ward and his family. The further finding of the judge that Mr. Badger acted in bad faith in withdrawing the deposits from the Plymouth County banks is not supported by the evidence. A recital of the judge's further findings relative to the attempted adjustment of the litigation by the

creation of a trust would serve no useful purpose. The material facts found by the judge relative to the petition for the appointment of a permanent coguardian were substantially the same as those found by him with relation to the appointment of the temporary guardian which we have already set forth.

In the view that we take of the evidence, we are of opinion that the finding of the judge that the interests of the ward and of his family would best be served by the appointment of a coguardian is plainly wrong and that the findings made by the judge upon which he reached that conclusion are not sound. The evidence does not disclose any emergency or necessity that would justify the appointment of a stranger as coguardian at the instance of a stranger against the wishes of those most interested in the ward's affairs by ties of relationship and of obligations owed to those through whom his fortune was derived. It is obvious that there could be only discord resulting from the appointment of Mrs. Walters, who in prior proceedings as attorney in behalf of the petitioner, Mr. Gladstone, had antagonized the wife of the spendthrift just as Mr. Gladstone had antagonized her to no real purpose in his properly ineffectual attempt in connection with the first case to bring about her removal as guardian of her children in the State of Maine, where they resided with her and the ward, when, by virtue of the appointment of Mr. Gladstone as guardian ad litem of the children, any right that she may have had to represent them as their legal guardian by virtue of her appointment by the Probate Court for the county of Middlesex or elsewhere ceased under the terms of G. L. (Ter; Ed.) c. 201, § 37. See *Appeal of Waitt*, 140 Maine, 109. We are constrained to express our disapproval of that action on the part of Mr. Gladstone and also of the action of the judge of probate for the county of Plymouth who sanctioned it.

If a necessity exists for the appointment of a disinterested person as a fiduciary, the one chosen should be disinterested in the complete sense, lest hostility between him and any person having a real interest disrupt the orderly adminis-

tration of the trust. And the wife of the ward was a person interested in the subject matter of the guardianship, the administration of the affairs of her husband, and the control of his person. G. L. (Ter. Ed.) c. 201, §§ 8, 9. *Dexter* v. *Dexter*, 283 Mass. 327, 329. *Mitchell* v. *Mitchell*, 312 Mass. 154, 159. It is manifest that the judge was deeply impressed with the belief that, in the event of the resignation or death of Mr. Badger as guardian, the Probate Court for Plymouth County would be stripped of its jurisdiction and that the whole structure erected for the protection of the ward and his family would collapse. We do not take that view. Without respect to whether, in the event that Mr. Badger ceased to be guardian of the ward, the Probate Court for the county of Plymouth would retain jurisdiction to entertain a petition for the appointment of a succeeding guardian, and we do not intimate that it would not were the ward not then domiciled in the Commonwealth, or whether the jurisdiction would be in Middlesex County where the estate of his grandmother from which he derives income is in course of administration (see *Vinton* v. *Sargent*, 195 Mass. 133, 134–135), it is clear that, if, at the time any such situation might arise, the ward still resided without the Commonwealth, one Probate Court or the other would have jurisdiction to entertain an application for the appointment of the successor, a de novo proceeding as matter of law (*Harding* v. *Weld*, 128 Mass. 587, 591), and that the mere filing of the petition, the issuance of an order of notice thereon, and the recording of the petition and notice in the proper registry of deeds (G. L. [Ter. Ed.] c. 201, §§ 8, 9, 10) would prevent the ward from gaining possession of his estate and thus protect his family pending the determination of whether the appointment of a succeeding guardian was necessary. *Sullivan* v. *Lloyd*, 221 Mass. 108, 113–114. And in the event that at the time Mr. Badger should cease to be guardian the ward should be a resident or inhabitant of the Commonwealth, the jurisdiction to act would be in the Probate Court for the county in which he was a resident or inhabitant. G. L. (Ter. Ed.) c. 201, § 8. *Harding* v. *Weld*, 128 Mass. 587, 592. That thus the jurisdiction to appoint a guardian of the spendthrift might be

in a county other than the one where Mr. Badger had been appointed as guardian of the ward, is of no material importance with respect to the protection to be afforded the family of the ward and the public. There is ample power in the Probate Courts to provide for that protection.

On all the facts and the law, and in the exercise of our discretion, we conclude that the petition of Mr. Gladstone as purported guardian ad litem and next friend of the minor children of the ward and his wife should not have been granted, that the interlocutory decree appointing Mrs. Walters as temporary guardian and the final decree appointing her as coguardian should be reversed, and that the petition should be dismissed.

The appeals of Viola M. Waitt and that in the name of Henry F. Waitt, the spendthrift, by counsel purporting to act as his attorneys, must be dismissed. The interlocutory decree appointing the temporary guardian and the final decree appointing the coguardian are reversed and the petition is dismissed.

*So ordered.*

### The Fourth Case.

This is an appeal from a decree entered in the Probate Court upon the motion of Arthur W. Blakemore for the allowance of a bill for services and disbursements as an attorney at law. The bill is in the following form:

"In the matter of Henry F. Waitt . . .

| | |
|---|---|
| Bill dated June 1, 1944 to the Guardians of Henry F. Waitt by Arthur W. Blakemore, attorney for E. Max Gladstone, Guardian Ad Litem, items from December 15, 1942 to April 26, 1944 inclusive . . . . . . . . | $2,372.65 |
| Bill to Guardians of Henry F. Waitt by Arthur W. Blakemore, dated June 27, 1944, items from February 15, 1944 to June 15, 1944 inclusive . . . . . . . | $ 738.99." |

The acting judge, hereinafter referred to as the judge, entered a decree on the motion on October 30, 1944, as follows: "The within motion after hearing is hereby allowed, in the sum of three thousand $3,000 dollars for counsel fees." The appeals taken therefrom were by Henry F. Waitt by George

E. Roewer, next friend, by Henry F. Waitt by George W. Abele, attorney, by Viola M. Waitt (wife of the spendthrift), by Henry F. Waitt, Junior, and Royal Nelson Waitt (minor sons of the spendthrift and his wife Viola) by Viola as their guardian.

The evidence is reported and discloses that at the beginning of the hearing Mr. Roewer stated that he was representing Henry (the spendthrift) and Viola (his wife) as guardian of the two minor children, not objecting to the reasonableness of the petitioner's charges for services, but merely raising the question of "whether the guardian [ad litem] had a right to engage counsel." At another point in the hearing Mr. Roewer disclaimed that he represented the ward, stating that he represented Viola, the wife of the ward, individually and as guardian of the two children.[1] Mr. Abele sought to be permitted to be heard as representing the ward, but was denied permission to do so by the judge. Mr. Blakemore was represented at the hearing by Mr. Gladstone. No counsel for any other party participated in the examination of the witnesses except Mr. Roewer. The legal guardian of the ward, Mr. Badger, appeared, by counsel, was present at the hearing and testified that he examined the items set forth in the petition upon which the petitioner's bill was based and found them to be accurate; that the petitioner had done the work exactly as stated and that the items of disbursement were correct. The guardian of the spendthrift made no objection to the allowance of the petition.

When this case came before us for argument, the petitioner moved that the several appeals be dismissed and we were advised, as in the three preceding cases, by counsel for Mrs. Waitt that she had discharged them and that she did not desire to prosecute her appeals further. Accordingly she was called and defaulted. It follows that the appeals taken in her behalf individually and as guardian of her two minor children by the spendthrift must be dismissed. For reasons

---

[1] Mr. Roewer, however, had entered his appearance for the ward, for Viola, and for Viola as guardian of Henry F. Waitt, Junior, and Royal N. Waitt, and as stated above appealed in the name of the ward as his attorney.

already given in the consideration of the first and second cases above decided, neither Mr. Abele nor Mr. Roewer had any standing to appeal in the name of the ward as his attorney.

The entry therefore must be

*Appeals dismissed.*