ETHEL G. BRADFORD *vs.* HELEN B. PARKER & others.

Essex.　　February 9, 1951. — June 1, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Marriage and Divorce,* Validity of marriage, One under conservatorship. *Conservator.*

The mere fact that a person was under conservatorship when he married did not render the marriage void.

PETITION, filed in the Probate Court for the county of Essex on August 14, 1950.

Bradford *v.* Parker.

The case was heard by *Phelan,* J.

*H. D. Sharpe,* for the appellants.

*A. P. Vitali,* for the petitioner.

QUA, C.J. The Probate Court has granted an allowance under G. L. (Ter. Ed.) c. 193, § 13, to the petitioner as the widow of Walter H. Bradford, late of Rockport. Bradford's sisters have appealed. All parties agree that the sole issue is whether the marriage of the petitioner to Bradford was valid. Since in the view we take the answers to other possible questions would not affect the result, we accept the issue as presented.

The evidence is not reported. The judge made brief findings of fact, the only findings material to the issue being that the petitioner and the decedent were married on June 29, 1947, and that Bradford was continuously under conservatorship from April 3, 1947, until his death on April 4, 1949. The appellants take the position that a person under conservatorship cannot enter into a valid marriage.

In *Middleborough* v. *Rochester,* 12 Mass. 363, it was held that one "void of understanding, so as to be incapable of making a valid contract" could not contract a marriage valid for any purpose. In that case the mental condition of the alleged husband was tried out, notwithstanding the fact that he was under guardianship, and in *Garnett* v. *Garnett,* 114 Mass. 379, at page 381 it was said that "Being under guardianship as an insane person is but prima facie evidence of actual insanity." *Simoneau* v. *O'Brien,* 311 Mass. 68, 73. It has been provided by statute for many years that an insane person, an idiot, or a feeble minded person under commitment shall be incapable of contracting marriage, but that the validity of the marriage shall not be questioned in the trial of a collateral issue, "but shall be raised only in a process instituted in the lifetime of both parties to test such validity." G. L. (Ter. Ed.) c. 207, § 5. *Goshen* v. *Richmond,* 4 Allen, 458.

But the mere fact of conservatorship (and that is all the record shows) certainly does not require a finding of any mental incompetence whatever. Under G. L. (Ter. Ed.)

c. 201, § 16, as appearing in St. 1945, c. 728, § 2, a conservator may be appointed by reason of advanced age or mere physical incapacity, without any mental impairment of any kind. The record does not disclose the reason for the appointment of Bradford's conservator.

But the appellants, as we understand them, argue that even though Bradford was in no way mentally incapacitated, his conservator had as full control over his property, contracts, and legal relations as if he had been insane (G. L. [Ter. Ed.] c. 201, § 20, § 12); that marriage affects property rights, involves obligations, and in effect is a conveyance to the new spouse of certain interests, in the ward's property; and that for these reasons marriage of the ward during conservatorship interferes with the conservator's complete control over the ward's property, and so cannot be valid. The appellants cite *Sullivan* v. *Lloyd,* 221 Mass. 108, where it was held that a spendthrift could not, at least without the consent of his guardian, enter into a valid contract to marry because of the rights of action for breach of the contract[1] which might result, because of the interference which such a contract would bring about with the guardian's power of control over the spendthrift's property, and because of the possible inconsistency of such a contract with the guardian's control over the person of the spendthrift under what is now G. L. (Ter. Ed.) c. 201, § 8. In that case, however, on page 115, it was intimated that actual marriage of a spendthrift "well may rest on considerations other than those which are decisive of the invalidity of an executory contract to marry."

In our opinion the intimation in *Sullivan* v. *Lloyd* was correct. Actual marriage of the ward presents a very different situation from the mere contract to marry which was dealt with in *Sullivan* v. *Lloyd.* Marriage creates a status. The property rights to support, dower, or to a share in the estate of a deceased spouse, although some of them may be affected by contract (G. L. [Ter. Ed.] c. 209, §§ 25, 29),

---

[1] But see now G. L. (Ter. Ed.) c. 207, § 47A, inserted by St. 1938, c. 350, § 1.

arise automatically from the status and not from any contract, conveyance, or other act of the ward in the nature of dealing with his property. *Richardson* v. *Richardson*, 246 Mass. 353. *French* v. *McAnarney*, 290 Mass. 544. A conservator has no power over the person of his ward similar to that possessed by a guardian. Compare G. L. (Ter. Ed.) c. 201, § 20, with c. 201, § 12. Guardians of minors have as complete control over the property of their wards as have conservators. G. L. (Ter. Ed.) c. 201, § 5. But, notwithstanding G. L. (Ter. Ed.) c. 207, § 7, as appearing in St. 1941, c. 270, § 1, the marriage of a minor ward without consent of his guardian is not void. *Parton* v. *Hervey*, 1 Gray, 119. Even a person under guardianship because of his mental condition may, if of sufficient capacity, change his domicil with the consent of his guardian, *Talbot* v. *Chamberlain*, 149 Mass. 57, and, if competent to do so, he may make a will. *Claffey* v. *Fenelon*, 263 Mass. 427.

Courts in various other States have decided that persons under guardianship, having sufficient capacity, may contract valid marriages. *Castor* v. *Davis*, 120 Ind. 231. *Johnson* v. *Johnson*, 214 Minn. 462, 467. *Weinberg* v. *Weinberg*, 255 App. Div. (N. Y.) 366. *Ross* v. *Ross*, 175 Okla. 633. *In re Hanrahan's Will*, 109 Vt. 108, 121. *Roether* v. *Roether*, 180 Wis. 24, 26–27.

*Decree affirmed.*