The AMERICAN NATIONAL BANK OF
BEAUMONT et al., Appellants,

v.

. R. E. BIGGS et al., Appellees.

No. 4929.

Court of Civil Appeals of Texas.

Beaumont.

March 11, 1954.

Rehearing Denied Dec. 1, 1954. .

Further Rehearing Denied Dec. 29, 1954.

Orgain, Bell & Tucker, Beaumont, Graves, Dougherty & Greenhill, Austin, Morris, Underwood & Oldham, Houston, for appellants.

R. E. Biggs, Liberty, F. L. Kuykendall, Austin, E. E. Davis, Newton, for appellees.

WALKER, Justice.

This appeal is from a decree which authorizes the trustees of the Aurelia Mitchell Trust to pay a fee to certain lawyers for

legal services rendered by these lawyers in another suit. The proceedings had in the other suit in the Court of Civil Appeals and in the Supreme Court are reported sub nomine Mitchell v. Mitchell at 235 S.W.2d 744 and 151 Tex. 1, 244 S.W.2d 803. Following is a statement of matters material to this appeal.

The Aurelia Mitchell Trust was created by the will of Aurelia Mitchell. Two of Aurelia Mitchell's children, namely, Leon Mitchell and Fuhr Mitchell, were named executors and trustees; and Leon Mitchell has acted as trustee since the death of his mother. Fuhr Mitchell was replaced as trustee by his brother Vick Mitchell before Mitchell v. Mitchell was filed, and Vick Mitchell has served as trustee since his appointment.

It is apparent that the administration of Aurelia Mitchell's estate in the probate court ended long ago, and from the nature of the issues made in Mitchell v. Mitchell, we infer that it ended, at least for any practical purpose, before that suit was filed.

The will of Aurelia Mitchell named two classes of beneficiaries of the trust. To one class, who may be called the life tenants, it was directed that the income from the principal of the trust be paid during the life of said tenants, and to the other class, who may be called the remaindermen, it was directed that the principal of the trust be paid when the life tenancies ended. Among the life tenants were the surviving children of Aurelia Mitchell, and, as we have stated, the trustees were some of these children.

For a space of time the trustees collected royalties under an oil and gas lease; and on the advice of counsel treated these royalties as income under the will of Aurelia Mitchell and paid them to the life tenants. The Trustees, themselves, were members of this class, as we have stated, and thus paid themselves a part of these royalties. The evidence does not show exactly what the royalties paid out amounted to but the sum approximated $100,000, and of this sum each of the trustees Leon Mitchell and Vick Mitchell received about $8,000 or $10,000.

Mitchell v. Mitchell was filed in 1949 as a class suit in behalf of the remaindermen and in this suit it was claimed by the plaintiffs therein that the royalties which the trustees had been paying to the life tenants were not income within the meaning of Aurelia Mitchell's will but, under a proper construction of that will were a part of the principal of the estate and should be paid eventually to the remaindermen. The pleadings in Mitchell v. Mitchell are not in the statement of facts filed on this appeal, although apparently put in evidence; but the statement of facts contains some information about that suit and the contentions of the parties makes it necessary to determine the nature of that suit. The trustees Leon Mitchell and Vick Mitchell were defendants in Mitchell v. Mitchell and we infer that they were the sole defendants and that the other life tenants were not parties to the suit. These trustees were sued both in their capacity as trustees and as individuals. It was claimed by the plaintiffs that the payments of royalties to the life tenants amounting, as we have stated, to about $100,000, was a misappropriation of funds of the trust by the trustees, and plaintiffs sought relief which would prevent any more payments of royalties to the life tenants and which would restore to the trust fund the royalties which had been paid to said life tenants. The plaintiffs also sought removal of the trustees Leon Mitchell and Vick Mitchell, or else that they be required to give security. We note the following sentence of the Supreme Court's opinion as reported at 244 S.W.2d 804, the same also being in evidence: "The suit was brought to require the trustees to carry out the alleged terms of the will with respect to the testamentary trust, and to hold large sums of money received by said trustees as oil royalties intact, and to require said royalties to be accumulated for the benefit of the trust estate, and to prevent the trustees from distributing said royalties to themselves and other children of the testatrix and to the children of the daughter of the testatrix who had been excluded." We note that this sentence also appears in the opinion of the Court of Civil Appeals. See: 235 S.W.2d at page 745.

However, it also appears that plaintiffs asked for a construction of the will. One of counsel for the remaindermen testified:

"Q. The trustees did not bring the action? A. Leon and Vick Mitchell did not. We sued Leon and Vick for misappropriating funds. * * *

"Q. I assume that you prepared the pleadings in that case? A. Yes.

"Q. Leon and Vick Mitchell were sued in this estate, as trustees? A. They were sued both ways, as trustees to keep them from distributing any more of this money, and individually.

"Q. It was an action actually, to determine the status of the estate, whether this royalty was corpus or income? A. That is right.

"Q. So far as the $100,000 is concerned, the suit was not brought for the recovery of that? A. We didn't bring it as such, but it turned out to be."

The first sentence of the Supreme Court's opinion reads: "This suit was brought by Raymond Mitchell, a grandson of Aurelia Mitchell, as a class suit under Rule 42, Texas Rules of Civil Procedure, for construction of a will executed by Aurelia Mitchell, wherein plaintiffs' attorneys intervened and sought to have their rights in the suit determined and protected." We think these matters necessarily show that the plaintiff remaindermen also prayed for a construction of the will.

The statement of facts shows in only a general way what response the trustees Leon Mitchell and Vick Mitchell made to the suit against them. Their counsel filed an answer for them both in their capacity as trustees and in their capacity as individuals. The only liability to remaindermen which the trustees had purely as individuals, apart from liability as trustees, was liability for the money they had received as members of the life tenant class of beneficiaries, but we infer that this liability as life tenants was not claimed in the petition. It was necessary for them, as an incident of the suit, to file an account, and they did so with the assistance of their counsel.

The trustees contested the suit. There is evidence that a few days after they were served with process, they went to the lawyer who had construed the will for them and employed him to represent them in the suit. The evidence shows what this lawyer and the associate counsel employed by him did, and the trial court was authorized to conclude that Leon Mitchell and Vick Mitchell were guided by the advice of counsel in determining what they should do about the suit and what cause of action in the suit they should pursue. Since they answered as trustees, the trial court was authorized to conclude that they acted as trustees in contesting the suit, that is, that they purported and undertook to act for the trust estate, and that their position in the suit was only an assertion of their previous construction of the will, or a consequence of that construction. In the absence of findings of fact, we assume, in support of the trial court's judgment, that the trial court so found.

The royalties which were disputed in Mitchell v. Mitchell were not all of the principal of trust estate. The circumstances suggest that the royalties, accruing and to accrue, did constitute the most valuable part of the principal while Mitchell v. Mitchell was pending but the value of the rest of the principal really was not proved.

After return of the Supreme Court's mandate and pursuant to a hearing, the trial court rendered a decree, which, among other matters, (a) declared that all mineral production and the proceeds thereof were a part of the principal of the trust estate; (b) appointed The American National Bank of Beaumont a co-trustee with Leon Mitchell and Vick Mitchell, who were retained in office (and thus had a partial success in the suit against them); (c) assessed a fee for the attorneys for the plaintiffs in Mitchell v. Mitchell (as directed by the Supreme Court's mandate); and (d) provided as follows:—"the issues that may properly arise on the obligation and duty

of—Leon Mitchell and Vick Mitchell to render an accounting, and of the amount of, their liability individually and as trustees on account of past conduct, and of the liability of other persons for monies heretofore distributed to them by said trustees are—severed—and—transferred into a new cause to carry the same style as this, but separately docketed as—No. 13751A—. This judgment—shall be—final—as to matters and issues herein expressly adjudged. All issues not so finally disposed of or transferred into shall be disposed of in No. 13751A, and this court retains continuing jurisdiction in said cause over the administration of the trust estate—and grants to the trustees the right to apply to this court in the—transferred cause for such orders as may be necessary for the court to enter in said cause relating to further administration of the estate in accordance with the mandate of the Supreme Court * * *."

This judgment was dated either June 5 or June 11, 1952. On July 14, 1952 the lawyers who had represented the trustees in Mitchell v. Mitchell filed a motion in No. 13751A (which, according to the part of the decree of June 5/11 just quoted, seems to be the only part of Mitchell v. Mitchell left pending) in which they described the services rendered by them and prayed the court "to enter an order allowing them reasonable fees" for their services to the trustees Leon Mitchell and Vick Mitchell and directing the trustees to pay this fee "out of the funds of said estate." Statements in the paragraph immediately before the prayer concern the trustees and indicate that the motion was also made in behalf of the trustees Leon Mitchell and Vick Mitchell. This motion was signed by the lawyers making it and at the foot, beneath the word "approved", appear the signatures of Leon Mitchell and Vick Mitchell. The American National Bank was not a party to this motion; according to said bank's allegations in the petition which it filed in the suit now under review, it had not qualified as trustee at this time.

No citation or other notice issued on this motion and no beneficiary of the trust estate other than the trustees themselves was made a party to it, unless the trustees are to be considered representative of the beneficiaries.

On July 14, 1952, the date when the motion was filed, and after a hearing at which the trustees Leon Mitchell and Vick Mitchell testified, the trial court made an order which fixed two attorneys' fees. One of these fees was assessed in behalf of one lawyer and was $1,500. The other fee, which was assessed in behalf of the other lawyers who had represented the trustees in Mitchell v. Mitchell, was 10 percent of the royalties which had been impounded after Mitchell v. Mitchell was filed. The order also recited an approval of "the motion of Leon and Vick Mitchell—to pay" the 10 percent fee to one of counsel, and it provided for a receipt and a release. This order purports to have been made pursuant to a motion of the trustees Leon Mitchell and Vick Mitchell, but the motion granted was that which we have described above and we infer that it was described in the order as one by the trustees because the motion did purport to be, in part, in behalf of said trustees. The impounded funds from which the 10 percent fee was to be paid under the order just described were royalties in litigation in Mitchell v. Mitchell, and under the opinion of the Supreme Court payment of the fee under the trial court's order would have been a payment from the principal of the trust estate. The testimony of Leon Mitchell on this hearing shows that he approved this fee and wished the order made, and this was the position of Leon Mitchell and Vick Mitchell on the trial of this cause.

The order of July 14th was performed only in part. The $1,500 fee was paid and steps were taken toward payment of the 10 percent fee, but the right to pay this fee came into question and was left to litigation.

The American National Bank, after the proceedings just mentioned, filed the suit which is now under review. This suit was brought against the lawyers in whose favor the order of July 14th had assessed attorneys' fees, against the bank's co-trustees Leon Mitchell and Vick Mitchell, and

against beneficiaries of the Trust. Plaintiff bank alleged that the order of July 14th was void or else was voidable because necessary parties, that is, beneficiaries of the Trust, had been omitted from and did not participate in the proceeding in which the order had been made. Plaintiff bank alleged further that the validity of the order of July 14th had come into dispute between beneficiaries of the Trust on the one hand and, on the other hand, the bank's co-trustees and persons entitled under the order. Plaintiff bank alleged further that it and its co-trustees had paid the $1,500 fee assessed by the order of July 14th. Concerning these matters plaintiff bank first prayed that the order of July 14th be declared void but, nevertheless, that the $1,500 payment be declared valid and that the bank be instructed how to charge the payment as regards income and principal of the Trust estate. In the alternative, plaintiff bank prayed that if the order of July 14th was valid the payment of the 10 percent fee be made in a certain way and that said bank be instructed how to charge the payment as regards income and principal.

Separate pleadings were filed by various defendants, but concerning these it is only necessary to say that counsel in whose favor the order of July 14th had assessed the 10 percent fee filed a cross action praying that the order of July 14th either be adjudged final and binding upon all concerned or that they be awarded a proper fee. The trustees Leon Mitchell and Vick Mitchell alleged that the order of July 14th was valid and prayed, in substance, that said order be performed.

The trial court rendered judgment decreeing the order of July 14th to be valid and to be binding upon the trustees and the beneficiaries of the Trust, and authorized the trustees to pay the 10 percent fee assessed by that order. The decree provided further that this fee should be paid from the principal of the trust estate.

From this judgment the plaintiff bank and certain beneficiaries of the trust estate who are described as contingent beneficia-ries (that is, remaindermen) have taken this appeal.

## Opinion.

The remaindermen and the American National Bank have filed separate briefs, and points of error assigned by the remaindermen will first be considered.

Point 5 of the remaindermen assigns as error that the trust estate is not liable for the services of the lawyers who represented Leon Mitchell and Vick Mitchell in Mitchell v. Mitchell "because the services of such attorneys were not rendered for the benefit of the estate and the position of the trustees and their attorneys was antagonistic to the estate."

In reply to Point 5 appellees say that a benefit may be conferred upon a trust estate without enhancing it, and that in Mitchell v. Mitchell the trustees did confer a benefit upon the trust estate because that suit resolved an ambiguity in the trust instrument, Aurelia Mitchell's will. It seems to be contended by the appellees that the main purpose of that suit was to procure a construction of the will. Appellees say as a part of this argument that the trustees' right to an attorney's fee for the services of their lawyers in defending Mitchell v. Mitchell ought not to depend upon whether they won or lost the suit.

We may agree with appellees that a construction of an ambiguous declaration of trust confers a benefit upon the trust estate and that the attorney's fee of a trustee and that of a beneficiary in a suit by either to construe the declaration may be charged against the trust estate under proper circumstances and, the expense being extraordinary, paid out of the principal of the estate. The facts of the decisions which appellees cite and which involve a construction of a trust instrument go no further than this. See In re Atwood's Trust, 227 Minn. 495, 35 N.W.2d 736, 9 A.L.R.2d 1126; Tolman v. Reeve, 393 Ill. 272, 65 N.E.2d 815, cited by appellees as Re Estate of Reeve; In re Crawford's Estate, 340 Pa. 187, 16 A.2d 521; Howland v. Green, 108 Mass. 277, 283. We have been unable to

find Clarke v. Clarke in the reports available to us; but according to appellees' description of it, this decision is like the others just cited. Butler v. Butler, 180 Minn. 134, 230 N.W. 575, and its successor under the same style at 183 Minn. 218, 235 N.W. 918 is of a different sort and we note that in it an attorney's fee was awarded to an unsuccessful party.

However, Mitchell v. Mitchell was not a simple suit to construe the declaration of trust. It involved much more, as we have shown in our preliminary statement. It involved past conduct of the trustees and threatened future conduct of the same sort, the depletion of a fund and its diversion from one class of beneficiaries to another. We have inferred that the plaintiff remaindermen did pray for a construction of the will, but the suit was also one to recover property, that is, to establish a right to a fund and to compel a restoration to the principal of moneys paid out, and the remaindermen asked that the trustees be removed or put under bond. All these circumstances must be considered, in addition to the prayer for construction, in determining whether the trustees were entitled to an attorney's fee.

In Re Atwood's Trust, supra [227 Minn. 495, 35 N.W.2d 740], the court said: "The applicable rule may be thus summarized: In the sound and cautiously exercised discretion of the court, and not as a matter of right, attorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate where such litigation, with respect to substantial and material issues, is necessary in order to resolve the meaning and legal effect of ambiguous language used by the settlor in the trust instrument, if an adjudication thereof is essential to a proper administration of the trust, and if, without unnecessary expense or delay, the litigation is conducted in good faith for the primary benefit of the trust as a whole. The situation in the instant case clearly indicates that the adjudication was primarily for the benefit of the entire trust, although as an incident thereof respondent and plaintiff both asserted rights which if recognized would have redounded to their sole benefit."

■ We think that the fact that the petition in Mitchell v. Mitchell involved a prayer for construction of the will does not make this rule of decision applicable to this case. For the rule stated is to be applied with reference to the main object of the suit; and it seems to us that the main object of the petition in Mitchell v. Mitchell was the recovery of property, to which the will was but evidence of title, and that the petition may be likened to one for land, founded on a will which does not involve a trust but does incidentally require construction. It would seem that the prayer for construction was but an incident of the petition, not the charges and prayers for relief against the trustees Leon Mitchell and Vick Mitchell. As we read the proof concerning the contents of the pleadings filed in Mitchell v. Mitchell, there was no question of fact here for the trial court to decide. Had there been it would, of course, have been resolved against the appellants by the trial court's judgment. But when all the facts pertaining to Mitchell v. Mitchell are considered, including the position taken by the trustees and the circumstances under which they acted before and after that suit was filed, that suit appears to have resolved into a dispute over a question concerning the administration of the trust estate which may equitably be likened to a sort of which Butler v. Butler, supra, appears to be one, and while the rule of decision quoted from In re Atwood's Trust was stated with reference to and in terms of suits to construe it, or one like it which has been applied in other types of situations involving questions of administration, can equitably be applied to this case in behalf of appellees. This matter is discussed later. We think that appellees' right to the fee does not depend upon whether the trustees conferred a benefit upon the estate, unless the term *benefit* is to be given a very broad construction.

■ Appellees also say that the trustees were executors as well as trustees and that the fee awarded by the trial court's

judgment was authorized by Article 3691, R.S.1925. This contention is overruled because Leon Mitchell and Vick Mitchell were before the court in Mitchell v. Mitchell either only or primarily in their capacities as trustees. It was their action as trustees in paying out the royalties to the life tenants, under their construction of the declaration of trust which caused that suit, and the basic question in that suit was, whether this action was right. So far as the evidence shows (and we have considered the order of July 14th first awarding the fee and the motion under which that order was passed) the services of the lawyers who represented Leon Mitchell and Vick Mitchell represented services performed for trustees, not executors. We note that the opinions of the Court of Civil Appeals and of the Supreme Court only refer to Leon Mitchell and Vick Mitchell as trustees and do not refer to them as executors although the mandate does. These circumstances indicate that if Leon Mitchell and Vick Mitchell were sued as executors this represented a formality. In their second brief, remaindermen state that Aurelia Mitchell's estate had been fully administered, and according to them and also according to appellees in their second brief, Aurelia Mitchell died about nine years before Mitchell v. Mitchell was filed.

However, there are other grounds on which the right of Leon Mitchell and Vick Mitchell to their attorney's fee may be placed; and in considering these grounds the following facts are to be kept in mind: The trial court was authorized to find that these were the facts and we assume, in support of that court's judgment, that such findings were made.

Leon Mitchell and Vick Mitchell, acting as trustees of the estate and in pursuance of an obvious duty, received advice from their counsel concerning the meaning of the will, to wit, that the royalties which we have mentioned were income within the meaning of the will and for that reason were, under said will, payable to the life tenants. There was reasonable ground for their counsel's advice if that advice be objectively considered, as we think it must

be. For evidence that this was true we cite the judgments of the District Court and of the Court of Civil Appeals holding that the construction adopted by the trustees' counsel was correct. We decline to hold that a lawyer who could convince those courts that he was right had no reasonable basis for his construction of the will; but it seems to us, on independent consideration of the opinion of the Court of Civil Appeals, that the will and the circumstances attending its execution did afford a basis for that court's judgment. The will was, in truth, ambiguous.

After receiving this advice, these trustees acted on it and because of it, and in good faith, without any improper motive, paid out these royalties to the life tenants as they were advised by their counsel until they were stopped by Mitchell v. Mitchell. That is, in paying out these royalties, these trustees were acting as trustees and were administering the trust estate as they thought the will directed them; they were attempting to perform their duty. The fact that the trial court retained them as trustees is some evidence that they did act in good faith as stated.

There is nothing to show that these trustees had any hostility toward the remaindermen or toward the provision made in the will for the remaindermen. The trustees benefitted from their conduct because, as members of the class of life tenant beneficiaries, they received a part of the royalties they paid out; but they were only two of several and had a minority interest. This matter is discussed later.

In Mitchell v. Mitchell the trustees simply stood their ground and, since they remained in office as trustees and were not required to give a bond, they were partially successful. They contested the suit, but did so as trustees and acted on advice of counsel; their presence as individuals is referable to their liability for the royalties which they paid out as trustees and is only an element of liability as trustees.

On these facts there is no question involving hostility by the trustees toward

the trust estate or the provision made for the remaindermen, no question involving appropriation of trust property for the individual benefit of the trustees not founded upon a construction of the will made under circumstances like those summarized, no question involving fraud or bad faith or improper motive, no question involving a mismanagement of the trust or any failure or neglect of duty concerning the trust estate except in the sense that the trustees' construction of the will was eventually held to be wrong, and decisions which came out of situations like these we have excepted are not applicable. Nor do we have a case where a trustee purports to act for one beneficiary at the expense of another, except as the trustees' construction of the will incidentally gave something to the life tenants instead of to the remaindermen.

What we do have is conduct by the trustees in the administration of the trust, intended and thought by them to be a performance of the trust, all in good faith and founded upon a construction of an ambiguous will by counsel, for whose views there were reasonable grounds in support, but which proved to be erroneous. The mistake, while perhaps involving matters of law, was not one concerning the general law regulating the administration of trusts. The question is, whether for defending this conduct in a suit attacking it and intended to stop it and prevent its future occurrence and to substitute for the trustees' construction of the will a different one, the trustees shall be allowed an attorney's fee out of the principal of the estate.

In connection with the question just stated, it is also to be borne in mind that a payment of the fee out of principal would affect not only the remaindermen; it would also affect the life tenants, and in the same proportion as the remaindermen, for the income going to the life tenants comes from the principal of the estate. The argument of the remaindermen seemingly implies that payment out of the principal would be one by them alone, out of their own property after their successful contest

with the trustees and their argument emphasizes the supposed injustice of this; and of course such a payment would be from remaindermen's property in a sense, but it would also be a payment by the life tenants, because it would reduce the fund from which the life tenants' income is to be earned. So, a payment out of principal would be a charge against the entire trust estate and not merely one against the remaindermen.

We have seen no case in point on the facts in which it was held as remaindermen contend, but there are opinions containing statements which may be extended to the facts of this case and which, as extended, would support remaindermen's position. See Melson v. Travis, 133 Ga. 710, 66 S.E. 936; Aydelott v. Breeding, 111 Ky. 847, 64 S.W. 916; In re Drake's Will, 195 Minn. 464, 263 N.W. 439, 101 A.L.R. 801. In connection with the last decision we note the following argument by the remaindermen, made in their discussion of the subject matter of their Point 6: "It is unjust to say to them (that is, to the remaindermen) that 'you won the suit and established royalties as corpus, but you must pay the fees out of your corpus for those who would have dissipated it.'" Dickerson v. Camden Trust Co., 1 N.J. 459, 64 A.2d 214 proceeds on a ground somewhat different from those stated in the three decisions just cited.

At least some of these decisions appear to be illustrations of a rule of decision which is broadly stated as denying the trustee the particular expense where his own fault caused it. See Bogert on Trusts & Trustees, Sec. 805, Vol. 4 (Part 1), pp. 147–148; Scott on Trusts, Sections 188.4, 188.6, 244, 245; 65 C.J. 718, Secs. 583, 584, 585; p. 947, Secs. 867 to 872, inclusive; p. 1079, Sec. 1006.

There are, on the other hand, decisions which have allowed the trustee his expense although his view was erroneous, his action unsuccessful, and his conduct the cause of the litigation from which the expense resulted; and in these cases weight has

been given to the trustee's good faith and to the reasonableness of his action. That is, the rule of fault was not applied.

See In re Sellers' Estate, 31 Del.Ch. 158, 67 A.2d 860. Holdings similar to that of the Delaware Chancellor have been made in other types of situations. See Crowell v. Styler, 314 Mass. 122, 49 N.E. 2d 599, holding that whether services of executors in defending an appeal were beneficial to the estate was too narrow a ground by which to determine executors' right to attorneys' fee for so doing, the reasonableness of executors' action and their good faith being controlling. And see In re Wanamaker's Trust Estate, 340 Pa. 419, 17 A.2d 380, and Zaring v. Zaring, 219 Ind. 514, 39 N.E.2d 734. The language of the opinion last cited may easily be applied to a dispute between trustee and beneficiary. And see Cohn v. Central National Bank of Richmond, 191 Va. 12, 60 S.E.2d 30, where the trustee, although successful, was awarded his attorney's fee on the ground that his conduct was reasonable. It ought not to be said that only successful action is reasonable. And see In re Gartenlaub's Estate, 185 Cal. 648, 198 P. 209, at page 211, 16 A.L.R. 520. Billings v. Warren, 216 Ill. 281, 74 N.E. 1050, indicates that the court would have allowed the trustee an attorney's fee had he acted mistakenly under an ambiguous will although refusing him the fee where his mistake concerns the general law of trusts.

Good faith of the representative, and necessarily the reasonableness of the action under the circumstances, have been given weight by Texas courts in situations where there was a basic duty which the representative's good faith pulled into action in a particular suit against particular people.

This occurred in Rowe v. Dyess, 213 S. W. 234, 236. There the Commission of Appeals considered the right of an administrator to his attorney's fee incurred in resisting an application to withdraw a part of the estate from administration. After extended litigation the administrator was eventually successful. See 213 S. W. 232. The Commission held that the administrator was entitled to his fee, but they put this holding, not on the administrator's success but upon his good faith and the reasonableness of his action. They said: "We think that in resisting an effort to withdraw the estate from administration, the allowance of fees depends upon whether in resisting such effort the administrator acts in good faith and under the honest belief that the attempted withdrawal is illegal. It certainly is his duty not to surrender the trust property to one not entitled thereto. In this case it seems that the county court refused the application to withdraw the estate, and we think that the administrator and the court were justified in opposing such withdrawal. If the right to withdraw had been clear, the administrator would not have been justified in contesting it. The propriety of defending a suit or proceeding against an estate must depend upon the apparent justice of the case; and, where an administrator acts in good faith, he will not necessarily be deprived of attorney's fees, even though he be mistaken as to the justice of the case."

Similar rulings have been made in other cases. See McCannon v. McCannon, Tex. Civ.App., 2 S.W.2d 942, cited in Huff v. Huff, 132 Tex. 540, 124 S.W.2d 327; Pendleton v. Hare, Tex.Com.App., 231 S.W. 334; Sass v. Hirschfeld, 23 Tex.Civ.App. 396, 56 S.W. 941 (ruling respecting trustee's right to reimbursement for costs); Caldwell v. Young & Morgan, 21 Tex. 800.

We note that in Pendleton v. Hare, supra, the Commission of Appeals, in discussing the right of an executor to an attorney's fee for probating the will, distinguishing Gilroy v. Richards, 26 Tex.Civ.App. 355, 63 S.W. 664, 667, on the ground that the temporary administratrix involved in the Gilroy case owed no duty to probate the will or to defend a contest of the petition to probate.

It seems to us that the trustees Leon Mitchell and Vick Mitchell were under a basic duty concerning the administration of the trust and that, as in Rowe v. Dyess,

their good faith and reasonable grounds brought this duty into operation against the remaindermen. It was the basic duty of these trustees to administer the trust as the declaration of trust, that is, the will, directed, and in order to perform this duty they had to construe the will. This posed a question of judgment and they took the question to their lawyer just as they should have done. In consequence, they formed an opinion, in good faith and on reasonable grounds, concerning the respective rights of the life tenants and the remaindermen to the royalties, and for exactly the same sort of reason justifying the administrator in Rowe v. Dyess, they were justified in resisting the remaindermen's demands that they administer the trust in a different way. It may then be said that they were entitled to their attorney's fee, as the administrator was.

■ It is a possible qualification of this right that the trustees could have requested instructions from the court both before and after Mitchell v. Mitchell was filed, and remaindermen have emphasized this in their argument. We attach no weight to this for these reasons: (a). A trustee is ordinarily not under an affirmative duty to apply to the court for the construction of a declaration of trust. Doubtless his failure to do so may require him to justify his administration of the trust, but that is a part of the question now before us. In Thornton v. Zea, Tex.Civ. App., 39 S.W. 595, at page 597, it was said of the trustee that he did have the duty to apply and this statement has been repeated. See Shindler v. Cooke, Tex.Civ. App., 90 S.W.2d 292. Both statements, however, were dicta, and that in Thornton v. Zea is not supported by the authorities cited there if the edition of Perry on Trusts available to us reads like that cited in Thornton v. Zea. What the trustee has, at least ordinarily, and, we think, under the facts before us, is a privilege, for his own protection, and the notes to Sec. 476–a of Perry on Trusts, the section cited in Thornton v. Zea, show this. The Court of Appeals in City Bank Farmers' Trust Co. v. Smith, 263 N.Y. 292, 189 N.E. 222, 93 A.L.R. 598; Id., 264 N.Y. 396, 191 N. E. 217, 93 A.L.R. 601, quoted from these notes at 189 N.E. 223, as follows: "It has been said that 'the purpose of this advisory jurisdiction assumed by courts of equity is not to provide a substitute for the usual legal advisers, but to protect trustees in the class of cases where the advice of competent lawyers is not sufficient protection, because of the doubtful meaning of the trust instrument, or because of uncertainty as to the proper application of the law to the facts of the case. There must also be a real need that the trustee's doubts be solved.'" This we consider to be the rule, at least in the ordinary case, and in that before us. (b) The language just quoted shows that a trustee is not entitled to instructions just because he wants them. There must be a doubtful question before he is entitled to such instructions; and he runs a risk of having to pay the attorney's fee himself if he has no ground for requesting the instructions. See Jones v. Harsha, 233 Mich. 499, 206 N.W. 979, at page 980. *Whether* a suit for construction of a will is to be filed is a question of judgment and will usually be determined by the same matters which lead to counsel to decide *how* a will shall be construed; he must first decide whether the will can be construed. Because the trustees Leon Mitchell and Vick Mitchell acted in good faith, on the advice of counsel, based on reasonable grounds, in administering the trust as they did, it cannot be said as a matter of law that they wrongfully or negligently failed also to request instructions from the court and unless we are to determine their right to an attorney's fee solely by the fact that Mitchell v. Mitchell went against them, this conclusion implies that their failure to ask a construction before they paid out the royalties does not deprive them of their fee.

We conclude that the right of the trustees Leon Mitchell and Vick Mitchell to have petitioned for instructions did not, under the circumstances, qualify their right

to stand their ground in Mitchell v. Mitchell or their right to an attorney's fee incurred in so doing.

It is evident that only generalizations of the broadest kind can be drawn from authorities which we have cited. However, we conclude that whether a trustee should be awarded an attorney's fee for defending a suit involving his administration of the trust depends upon equitable considerations, that each case must be decided upon its own facts, that the success or failure of the trustee in the litigation may be a matter to be considered but does not necessarily determine the trustee's right to the fee, and that the trustee's good faith and the reasonableness of his actions are matters to be considered, at least when this good faith and reasonableness caused the trustee to attempt the performance of a duty which one so minded ought to have performed. Of course, the single fact that the trustee thinks it his duty to do something will not necessarily give him his fee, nor under ordinary circumstances, though not in all cases (as in Re Sellers' Estate) will the fact that he has made a mistake concerning the general law of trusts and trustees. However, it is apparent from Zaring v. Zaring, supra, that an ambiguity in the declaration of trust is a circumstance to be considered in the trustee's favor.

There are some incidental matters yet to be discussed, but it is our conclusion, which we will announce at this point, that under the facts concerning the actions of the trustees Leon Mitchell and Vick Mitchell, that is, their good faith, the reasonableness of their actions, their reliance on advice of counsel, their attempt at performance of a duty, and the ambiguity of the will as the source of their actions, the trial court, on the basis of equitable considerations, was authorized to view Mitchell v. Mitchell as one concerning the administration of the trust estate such as those involved in Re Sellers' Estate; Crowell v. Styler; In re Wanamaker's Trust Estate; Zaring v. Zaring; Cohn v. Central National Bank of Richmond and In re Gartenlaub's Estate, supra, and in Butler v. Butler, supra, for which the trustees ought to be allowed their attorney's fee, and was authorized to charge this fee to the entire trust estate, remaindermen as well as life tenants, that is, to the principal of the estate.

The incidental considerations to which we referred are these: (1) Should the fee awarded by the trial court be charged to the life tenants instead of to the entire estate? In point 6 the remaindermen say that this should be done if a fee is awarded the trustees because "such services were for the benefit of the life beneficiaries"; and this is the burden of their argument. Thus they say: "As stated, the views of the trustees and their attorneys were those of the life beneficiaries. They would have established their right to monthly royalty payments, and they defended against their own personal liability for repayment of past royalties already paid out. The income from the trust goes to these life tenants. Since they caused the lawsuit by their misconception of the law, their attorney's fees should be charged, if at all, to trust income."

Point 6 is overruled. The trial court was at least authorized to find that the life tenants did not cause the trustees Leon Mitchell and Vick Mitchell to construe the will and to pay out the royalties as they did or to follow the course of action in and respecting Mitchell v. Mitchell which they did follow. Instead, the trial court was authorized to find that the trustees' decision was their own. Further, according to the information before us, the life tenants were not parties to Mitchell v. Mitchell. Still further, the trial court was authorized to find, as we have already stated, that in Mitchell v. Mitchell the trustees purported to act as trustees, that is, to act for the entire trust estate and not for one class of beneficiaries at the expense of the other. We think it immaterial under these circumstances that the trustees' position gave the life tenants

something which it took away from the remaindermen; this was but an incident of the trustees' construction of the will.

(2) What effect should be given the failure of trustees Leon Mitchell and Vick Mitchell to ask instructions? This has been discussed.

■ (3) What effect should be given the personal interest which the trustees had under the will, that is, to the fact that as members of the class of life tenants, the trustees Leon Mitchell and Vick Mitchell received a benefit under their construction of the will at the expense of the remaindermen? Under the circumstances no effect is to be given this personal interest of Leon Mitchell and Vick Mitchell. This interest might well bear on a question concerning the good faith of Leon Mitchell and Vick Mitchell, but since the trial court was justified in finding that the trustees acted in good faith, as trustees, their personal interest is not material except, perhaps, on some question of public policy, and we think there is none. For the trustees Leon Mitchell and Vick Mitchell were but two of several life tenants and owned a minority interest; the will names as life tenants ten children and the descendants of another child. It cannot be said as a matter of law that the trustees were representing either themselves or the life tenants; the trustees had a duty to carry out and execute the declaration of trust even though this incidentally benefited themselves and the other life tenants.

■ (4) There is evidence that the lawyers who represented Leon Mitchell and Vick Mitchell in Mitchell v. Mitchell did not contract for the personal responsibility of those trustees but contracted to look to the assets of the estate for their fee. We think this immaterial to the issue under consideration.

■ (5) The mandate of the Supreme Court in Mitchell v. Mitchell directs the trial court to assess a fee against the trust estate in behalf of attorneys for the remaindermen. Was this an implied adjudication that the trustees' attorneys were not to be paid from the estate? We think not. The opinion of the Supreme Court states that the remaindermen's attorneys had intervened in Mitchell v. Mitchell [151 Tex. 1, 244 S.W.2d 803] "and sought to have their rights in the suit determined and protected", and we infer that the award of the fee is to be referred to this intervention. We note that appellees, in their second brief, state that the trustees Leon Mitchell and Vick Mitchell did not pray for an attorney's fee in Mitchell v. Mitchell.

■ Point 7 of the remaindermen assigns as error that a part of the fee which the trial court's judgment awarded and ordered paid from the estate was pay for services which were rendered for Leon Mitchell and Vick Mitchell as individuals and not as trustees. This point is based on testimony that counsel for said trustees filed answer for them in Mitchell v. Mitchell in the capacity of individuals as well as in that of trustees. Of course the trust estate is not liable for services rendered Leon Mitchell and Vick Mitchell in their individual capacity, but as we construe the evidence the trial court only awarded compensation for services in behalf of Leon Mitchell and Vick Mitchell in their capacity as trustees. The only liability to the remaindermen which Leon Mitchell and Vick Mitchell had purely as individuals was for money they received as life tenants. Their obligation to the remaindermen to account for royalties which they, as trustees, paid to the class of life tenants (including themselves) and their liability to surcharge for this money are elements of their liability as trustees, not as individuals, and the services of counsel for Leon Mitchell and Vick Mitchell which, it might be said, were referable to account and surcharge were services rendered in behalf of Leon Mitchell and Vick Mitchell as trustees, for which, under our conclusions, said trustees were entitled to an attorney's fee out of the estate. The evidence does show, as stated, that counsel for said trustees filed an answer for them both as trustees and as individuals, but there is nothing to show that this answer

covered the liability as life tenants, apart from that as trustees. Since the other life tenants were not parties to Mitchell v. Mitchell and since the liability as life tenants was not material to the remaindermen because of the broader liability of the trustees to a surcharge, it may be inferred that the liability as life tenants was not claimed in Mitchell v. Mitchell. The cross examination of Leon Mitchell by counsel for the remaindermen at S. F. 18 and 19 indicates that the money for which Leon Mitchell and Vick Mitchell were sued was the total amount of the royalties paid out by them, that is, the $100,000, not the much smaller $16,000 or $20,000 which they received as life tenants, and thus indicates that the liability to surcharge and not the liability as life tenants was involved in Mitchell v. Mitchell. There is testimony by the leading counsel for Leon Mitchell and Vick Mitchell which indicates that he, and thus his cocounsel, *purported* to act for Leon Mitchell and Vick Mitchell as trustees. Thus in his testimony on the trial of this cause he once said: "I represented Leon Mitchell and Vick Mitchell as Trustees of the estate." The order of July 14th which first assessed the attorney's fee can be construed as awarding only a fee for services to Leon Mitchell and Vick Mitchell as trustees, and we note that this order states of the $1,500 fee paid Mr. Cain for his services in the trial court on trial of Mitchell v. Mitchell in that court "that $1,500 is a reasonable fee to be paid to the Hon. Chap B. Cain for the services rendered by the said Chap B. Cain to the Amelia Mitchell trust estate." Mr. Cain was employed by the counsel for Leon Mitchell and Vick Mitchell whose testimony we have just referred to, and if the services of Mr. Cain for which the order of July 14th assessed a fee were for the trustees as such, and this the order implies, one would infer that the services of other counsel for which the 10 per cent fee was assessed were of the same sort. Point 7 is therefore overruled.

In their Points 1, 2, 3, and 4 the remaindermen assign error to the order of July 14th which first assessed the attor-

ney's fee and in its single Point of Error the American National Bank also assigns error to this order. These Points were filed because the judgment under review purports to affirm and declare valid this order, but the judgment can stand as an independent decree, rendered in an independent suit, regardless of the validity of the order, and these Points are not material because of our conclusion that the attorney's fee was properly awarded. We note that according to recitations in this judgment which have not been attacked, all parties necessary to be joined have been joined, including those before the court when the order was rendered. See Tr. 46 and 47. However, we will discuss these Points so far as is necessary to determine whether the order of July 14th bound the remaindermen.

Remaindermen's Points 1 and 2 are to the effect that the order of July 14th was void because it was passed in Mitchell v. Mitchell after mandate had been returned from the Supreme Court and they say this mandate did not authorize this order. If we agree with remaindermen that the mandate did not authorize this order, nevertheless the prior decree of the trial court in Mitchell v. Mitchell dated June 5th (or 11th) contains statements which indicate that the trial court had taken over the administration of the trust estate, and there is nothing to show that anybody has objected to this action. If these circumstances also make Points 1 and 2 immaterial (and we express no opinion on this question) then remaindermen's Points 3 and 4 would become material if appellees' rights depended on the order of July 14th. The evidence shows that only the trustees Leon Mitchell and Vick Mitchell and their counsel were before the trial court when that court heard the motion on which the order of July 14th was based (unless said trustees vicariously represented the remaindermen) and that no notice was issued under the motion and none was given to any beneficiary. The evidence would not support a finding that any of the beneficiaries other than Leon Mitchell and Vick Mitchell knew of this motion before it

was heard. Assuming that the trial court effectively took charge of the administration of the trust, was it necessary to make the remaindermen parties to this motion and to give them notice of it? How does the failure to do so affect the order of July 14th?

Equity jurisdiction and procedure not affected by statute is sufficiently explained by the following: (1) 65 C.J. 676, Sec. 538; p. 677, Sec. 539; 54 Am.Jur. 220, Sec. 279; Sec. 282; p. 484, Sec. 628; (2) opinions concerning the Maryland practice: Abell v. Abell, 75 Md. 44, 23 A. 71, 25 A. 389; Gottschalk v. Mercantile Trust, etc., Co., 102 Md. 521, 62 A. 810; Whitelock v. Dorsey, 121 Md. 497, 88 A. 241; Baer v. Kahn, 131 Md. 17, 101 A. 596; Kramme v. Mewshaw, 147 Md. 535, 128 A. 468; McCrory v. Beeler, 155 Md. 456, 142 A. 587; Johnson v. Johnson, 168 Md. 568, 179 A. 831; Kiser v. Lucas, 170 Md. 486, 185 A. 441; Art Students' League v. Hinkley, D.C., 31 F.2d 469, affirmed, 4 Cir., 37 F.2d 225; (3) and see: Scovill v. Scovill, 191 S.E. 323, 4 S.E.2d 286; Hood v. Cannon, 178 S.C. 94, 182 S.E. 306; In re Will of Lawson, 215 Iowa 752, 244 N.W. 739, 88 A.L.R. 316.

From these authorities it appears that when no statute was applicable it was held that the court might have authority to pass an order ex parte, authorizing the trustee to act, but did not have this authority where the proceeding would be prejudicial to rights of the beneficiary not made a party. In the appeal under review, the order of July 14th was prejudicial to the remaindermen, and the interest of the trustees Leon Mitchell and Vick Mitchell was inconsistent with the interest of the remaindermen. For these trustees had employed counsel to resist the remaindermen's claim to a part of the estate, yet, under the order of July 14th, had authority to pay these counsel out of the property in dispute, which is eventually to be delivered to the remaindermen. And, although the matter is really not material, our description of the motion, the hearing, and the order of July 14th shows that this proceeding was not an adversary one; the order, in fact, purports to grant a motion by the trustees Leon Mitchell and Vick Mitchell. The proceeding was not an independent suit but seems to have been only the presentation of a claim to a court engaged in administering a trust. The remaindermen, then, ought not to be, and we hold that under the practice we are considering they were not bound by the order of July 14th, because the proceeding of July 14th involved rights of the remaindermen against the trustees and the trustees' interest was inconsistent with that of the remaindermen. In addition to the authorities cited, see Bogert on Trusts and Trustees, Sec. 593, Vol. 3, Part 2, p. 60, et seq.; 9 A.L.R.2d 10.

The American National Bank's single Point of Error assigns as error that the order of July 14th was not binding upon the beneficiaries of the trust because of certain provisions of the Texas Trust Act, Vernon's Ann.Civ.St. art. 7425b–1 et seq., which the proceeding of July 14th did not comply with, and the Bank's argument also points out the inconsistency of interest between trustees and remaindermen. The Bank and the remaindermen disagree about the applicability of the Trust Act; the remaindermen say that the statute does not apply because the will was made before the Act was passed. We will not discuss the statute; since under the equity practice the remaindermen were not bound by the order of July 14th and we have seen no statute which would support that order. If the Trust Act does not apply the remaindermen still are not bound.

The judgment of the trial court is affirmed.

## On Motions for Rehearing.

The judgment rendered on appellants' motions for rehearing is set aside, the opinion then filed is withdrawn, and the following opinion is substituted. The present opinion adjudicates the appellants' motions for rehearing and also that of the appellees, and in this we repeat (with some changes) parts of the opinion withdrawn

which are not affected by our conclusion about appellees' motion for rehearing.

\* \* \* \* \* \*

A motion for rehearing has been filed by the Bank and another by Raymond Mitchell, et al., and these parties have filed supplemental transcripts in connection with their motions. Arguments responding to these motions have also been filed by appellees. Before discussing issues made by these motions and arguments we shall consider further the merits of the Point of Error assigned by the Bank in its original brief.

This point attacks the order of the trial court dated July 14, 1952, from which this suit arose. This order is discussed in our original opinion; it assessed in behalf of appellees the attorney's fees which they claim in this suit. In the argument under this point (and on rehearing) the Bank treats the proceeding in the trial court at which the order was made as a suit and treats the order itself as a judgment. The Bank states the question as this, whether the order bound the trust, and argues that it did not because the beneficiaries of the trust were required to be but were not made parties as provided in Subdivision C of Article 7425b–24, V.A.T.S. Reference is also made to Subdivisions A and B of Section 19 of that statute as evidence of a legislative intent that notice to the beneficiaries of the cause of action adjudicated by the order of July 14th was required.

We agree with the Bank that the applicability of Sections 19 and 24 is not affected by the fact that the trust was created before the Texas Trust Act, namely, Article 7425b–1 et seq., was enacted. It seems to be the position of Raymond Mitchell, et al., that no part of Article 7425b applies to trusts created before it was enacted; but Sections 19 and 24 of this statute pertain to matters which have no logical connection with the date when the trust was created. The limitation which would be placed upon the operation of Sections 19 and 24 by Raymond Mitchell,

et al., is unnecessary, and we see no evidence in Article 7425b that such a limitation was intended. Instead, the deliberate omission of provisions for prospective operation which occurred during the enactment of Article 7425b, to which the Bank has directed our attention, indicates strongly that this limitation was not intended.

However, we think that the provisions of Article 7425b referred to by the Bank, that is, Subdivision C of Section 24 and Subdivisions A and B of Section 19, were not applicable to the proceeding determined by the order of July 14th. For these provisions of Sections 19 and 24 apply to and regulate suits and actions and the proceeding determined by the order of July 14th was not a suit or action. We are satisfied now that it was only the presentation of a claim to a court deemed to be administering the Trust, and we think that Subdivisions A and B of Section 19 and Subdivision C of Section 24 were not intended to apply to a proceeding of that kind. The only parties essential to that proceeding were before the court—if *only* the consent and authority of the trial court to the payment of the claim was desired.

The Bank's point of error is therefore overruled on its merits. Because of these conclusions we now also overrule on the merits Points 1, 2, 3, and 4 filed by the appellant remaindermen, although we remain of the opinion that these points and the Bank's point are immaterial for the reason stated in our original opinion, namely, the judgment under review was rendered in an independent suit. The attacks made upon the judgment because certain parties were omitted are considered hereinafter and are overruled. We retract statements in our original opinion concerning a lack of authority on the part of the trial court, because of omission of parties, to pass the order of July 14th. The questions material to the trial court and to this court are, whether this order bound the beneficiaries, and if it did not, then whether the attorneys' fee is actually owed by the Trust.

What effect, then, did the order of July 14th have? Seawell v. Greenway, 22 Tex. 691, decided at the Galveston term in 1859, was an instance of the administration of a trust by the district court. There the trust was for the benefit of creditors, but the court was exercising the powers of a court of equity and was not proceeding under a statute. The earliest statute we have found regulating assignments for creditors was the Act of March 24, 1879. G.L.1879, p. 57, Vernon's Ann.Civ.St. art. 261 et seq. In the case cited, the trial court had in term time approved a claim by the trustee for a credit on his account of a sum of money which had been stolen from him, and for a commission on this money; but at the next term the court entertained objections to this claim and disallowed it. On appeal from the order of disallowance the trustee argued that the original order allowing his claim could not be set aside at a later term and that this order conclusively established his right to the credit. The Supreme Court held, however, that the trial court had properly set aside the original order allowing the claim. Said the Court: "The proceedings of the court, in the administration of the trust, were, for the most part, ex parte. The Court was exercising the powers of a court of chancery, and it was very proper to consider all orders passing the accounts of the trustee, as orders or judgments nisi, subject to be set aside upon future inquiry into the correctness of the accounts. It was competent for the court, in the administration of the trust, to proceed in such manner as best suited its own convenience, and the convenience of the agents who assisted the court in the administration of the trust, and above all, in such manner as would best attain the object to be accomplished, which was the fair and just administration of the trust estate for the benefit of the creditors."

■ This decision shows that an ex parte order of the district court allowing a claim in the administration of a trust is not necessarily final in the sense that it cannot be set aside or disregarded at a later term, and we think that the trial court's order of July 14th need not, and indeed ought not to be given any greater effect in the present suit than was given the order in the decision cited, for the reasons stated in our original opinion, namely, that the interests of the trustees and the remaindermen concerning the payment of the attorneys' fee to appellees were inconsistent. In our original opinion we made this holding only as respects the practice in equity independent of statute, but we now make this holding generally as regards such a proceeding as that of July 14th. The inconsistency of interests, without the usual equitable grounds of attack on final judgments, was alone enough to authorize the court to reconsider the merits of the attorneys' fee and, if the fee be found not owing, to set aside the order of July 14th and deny recovery of the attorneys' fee. The trial court erred in holding that the order of July 14th bound the beneficiaries as a final judgment on the merits binds a party to a suit.

This conclusion, of course, does not apply to suits and actions, and it does not require that the beneficiaries of the Mitchell Trust be made parties to every claim presented in the trial court while that court may be engaged in the administration of the Trust; our conclusion only means that an ex parte order by that court allowing a claim against and payable out of the Mitchell Trust *does not necessarily* bar the beneficiaries through the principles of finality of judgments, res judicata, or estoppel by judgment from contesting the claim allowed. If on a beneficiary's contest the claim be found to be a proper one, the contest will fail; but claimant or trustee *may* have to depend on the merits of the claim for a defense, instead of on the principles of finality of judgments, res judicata, or estoppel by judgment; and unless there is a genuine question about the claim it is not apparent to us that a trustee needs any other defense. The situation here is like that stated. The order of July 14th expressed the trial court's consent that the trustees of the Mitchell Trust pay the attorneys' fee and thus authorized them, as far as the court was concerned, to pay

the fee; but as regards a subsequent attack on the order and the attorneys' fee by a beneficiary, the trustees of the Mitchell Trust, after the order of July 14th was made, were dependent for a defense on the actual merits of the claim for the fee, as determined on the beneficiaries' suit contesting the claim. And this, of course, is one answer to the appellees' argument that the order of July 14th bound the beneficiaries of the Mitchell Trust because the trustees, with the court's consent, had authority to pay a claim for services which they had authority to engage. There is no conflict between our original conclusion that the trustees had authority to contract for the services of appellee attorneys and our conclusion that the order of July 14th did not bar a subsequent attack on the fee by a beneficiary who was not a party to the proceeding of July 14th.

We proceed to consider the motions for rehearing.

Ground I of the motion filed by appellants Raymond Mitchell, et al., assigns as fundamental error that "the minor remaindermen" for whom Morris was appointed guardian ad litem were indispensable parties to the present suit because the attorneys' fee will be paid out of property in which they have an interest, but that said minors were not served with citation and were not brought within the jurisdiction of the court. It is not clear to us that any of this group of appellants except Mr. Morris has any interest in the subject matter of this ground, but Mr. Morris does have such an interest.

Ground IV of the Bank's motion assigns as error to our judgment that none of the remaindermen and contingent beneficiaries who were *not* entitled to receive distribution from the Trust when the action was filed were made parties to this suit and did not become parties and were not served with citation, but that said persons were necessary parties if such a judgment as that under review was to be rendered.

 If these grounds are to be given any effect, they must have a basis in the record; and the only part of the record (except some pleadings by persons other than appellees) which tends to show that such persons as are mentioned in these two grounds actually exist is the provision of the trial court's judgment appointing Morris guardian ad litem for minor contingent remaindermen as a class and appointing him representative of *existing* (and future) remaindermen not entitled to income, as a class. However, in deference to this provision we assume that such persons, namely, contingent remaindermen not now entitled to income, do exist. It is not at all clear that these persons are not included in the persons shown by the evidence at S. F. 3 and 4 to be beneficiaries of the Trust; but the purport of this testimony seems to be, and we will construe it as showing, that these persons, who are the ones (other than Mr. Morris) named as defendants in the Bank's petition, all of whom were served with citation on the Bank's original petition, were only the particular existing beneficiaries who were then entitled to income. We infer from the nature of Mr. Morris' appointment, which seems to refer to persons not otherwise named, that the persons for whom he was appointed guardian ad litem were not of this class. If our construction of the evidence at S. F. 3 and 4 is right, then the pleadings show that the contingent remaindermen not entitled to income were not named as parties, either individually or as a class, in any pleading, and thus were not and did not become parties to the suit, and there was no basis for the trial court's appointing Mr. Morris their guardian or representative. Mr. Morris was sued as guardian ad litem before his appointment in this suit and the minors were not sued independently as a class, nor individually if our conclusions above are right. This procedure did not make these minors parties to the suit or give them notice of the suit. Mr. Morris' appointment in the suit of Mitchell v. Mitchell did not authorize him to appear in that capacity in the present suit, which is an independent proceeding, not only in form but also in issue. Thus, in Wright v. Jones, Tex.Com.App., 52 S. W.2d 247, at page 251, it is said: "A guard-

ian ad litem or next friend is recognized only for certain specific purposes; his powers are limited to matters connected with the suit in which he is appointed (22 Cyc. 661) and do not include the right to appear either actually or constructively in answer to a cross-action * * *." And see Hartford Accident & Indemnity Co. v. Proctor, 206 App.Div. 510, 201 N.Y.S. 420; Shaw v. Shaw's Adm'r, 174 Ky. 398, 192 S. W. 524; Meairs v. Kruckenberg, 171 Kan. 450, 233 P.2d 472, 31 A.L.R.2d 525; Waitt v. Badger, 318 Mass. 101, 60 N.E.2d 375, at page 380.

Ground III of the Bank's motion for rehearing assigns as error that some of the defendants named in the Bank's petition, although served with citation on that petition, did not answer and were never served with any other pleading, and thus, with no pleading demanding the attorney's fee; and under Ground II the Bank argues that the only citations issued in the cause were issued on its original petition and that this petition did not put the right of the appellee attorneys to the fee in issue.

To the extent that these grounds and the statements and arguments thereunder (and the other grounds, and arguments thereunder, made for the first time in the motions for rehearing) raise attacks on the trial court's judgment, we will treat them as amendments of the parties' briefs. We are authorized to do this since the cause was tried to the court without a jury and no motion for new trial was necessary and none was filed. See T.R. 431; Texas Cities Gas Co. v. Gomez, Tex.Civ. App., 160 S.W.2d 74; Gillette Motor Transport Co. v. Wichita, F. & S. R. Co., Tex.Civ.App., 170 S.W.2d 629. Also, see: T.R. 422, 429, 437, 469, 481, 491 and 504.

To the extent that these grounds of the motions for rehearing complain of the omission of parties they are overruled. The pleadings of the appellee attorneys show that their claim to the attorneys' fee is based on a contract between them and the persons who were serving as trustees of the Mitchell Trust and on their per-formance of this contract; and the Bank's original petition at least implies this. The prosecution of such a claim by suit (as distinguished from the presentation of claim to a court administering a trust, discussed above) is regulated by Section 19, Article 7425b, and according to this statute the only indispensable parties defendant (by which we mean those to be named in a pleading) to the demand for the fee by appellee attorneys were the trustees of the Mitchell Trust. The beneficiaries were not necessary parties. All of the trustees mentioned were parties to this suit, and two of them, Leon Mitchell and Vick Mitchell, were defendants and filed a pleading showing their consesnt to performance of the order of July 14th. Thus the parties required by Section 19, Article 7425b, to be named as parties in a pleading if the attorneys were to have a judgment against the Trust collectible out of assets of the Trust were parties to the suit.

Furthermore, to the extent that these grounds assign a lack of service of citation upon beneficiaries as error we also overrule them. The beneficiaries were not necessary parties to the suit and the failure to serve them with citation upon the appellee attorneys' demand for their fee or upon a pleading putting the validity of that fee in issue, if the Bank's original petition did not (and we think that it necessarily did), was not material. The Bank's original petition gave notice that the merits of the fee were involved because this pleading shows, by necessary implication if not in so many words, that the appellees' right to the fee was being disputed by parties omitted from the proceeding of July 14th.

We turn now to Grounds II and V of the Bank's motion for rehearing. On the first rehearing we stated that these grounds were not material for reasons which need not be stated. This holding is withdrawn and these grounds are adjudicated on the merits thereof.

The Bank's Ground II assigns error to our conclusion that the trustees were entitled to attorneys' fees because "the judg-

ment of the trial court – held only that the judgment of July 14th, 1952, which awarded attorneys' fees, was a valid judgment and binding on the trustees, beneficiaries and remaindermen – and that payment could be made under – such judgment of July 14, 1952, and therefore, the trial court did not directly or by implication pass on or – adjudicate that attorneys' fees as such, independent of the judgment of July 14, 1952, were owing or payable by the Trust." Ground V reads: "This court committed error to Appellant's prejudice in making findings of fact on the issues pertinent to the question of whether or not an attorneys' fee, as such, was owing by the Trust, independent of liability under the judgment of July 14, 1952, when such issues were not before the court under the pleadings, when the necessary parties for deciding such issues were not properly before the court, and because the trial court did not make any holding directly or by implication, that attorneys' fees as such were owed by the Trust independent of what might be owing under the terms of the judgment of July 14, 1952."

These assignments raise questions which were not raised on the original hearing and the questions raised are based on a construction of the pleadings and of the judgment under review which is inconsistent with contentions made on the original hearing by the other parties, that is, the appellant remaindermen and by the appellees.

Our original opinion shows that our discussion of the merits of the attorneys' fee was made in our discussion of Points 5, 6 and 7 filed by the remaindermen. Of these three the basic point is Number 5, which reads: "The trial court erred in awarding any attorneys' fees for defendants out of the Mitchell Estate because the services of such attorneys were not rendered for the benefit of the estate and the position of the trustees and their attorneys was antagonistic to the estate." Appellees joined issue with the contentions made under these points; and their Counter-Point 3 reads as follows: "Since

the judgment, from which this appeal was taken, was entered after all present and future beneficiaries had been made parties or had waived citation, the order of July 14, 1952, was merged into and became a part of the judgment rendered March 27, 1953, the trial court had the power, authority and jurisdiction to hear and determine whether appellees were entitled to be paid attorneys' fees out of the trust, and the amount of such fees." After this cause was argued the appellant remaindermen filed a second brief and to that the appellees filed a brief in reply, and in these briefs these parties continued their arguments respecting the merits of the attorneys' fee.

The Bank, however, took no exception to these contentions being made by remaindermen and appellees, and unless there is no basis whatever in the trial court's judgment for these contentions, we will allow our ruling upon these contentions to stand and will overrule the Bank's Grounds II and V. It is our conclusion that the trial court's judgment does afford a basis for these contentions by remaindermen and appellees. We do not agree with the Bank as to the effect which is to be given the trial court's judgment.

The question raised by the Bank's Grounds II and V is, what does the trial court's judgment mean? and this question must be determined by construing the record. The judgment under review declares that "the order – by this court – dated July 14, 1952, – is a valid, subsisting and proper order of this court and – is in all things binding on the trustees – and upon all – beneficiaries and remaindermen and that – payment of attorneys fees by the trustees – pursuant to – said order of July 14, 1952 is – authorized and proper." This language expresses two determinations, first, one of validity, a matter of substance, and next, one of conclusiveness, a matter, perhaps, of parties and procedural rules; and the language is general and will extend to and adjudicate all attacks, of substance or otherwise, on the order of July 14th, which were made in

the pleadings. The question then is, what attacks were made on the order of July 14th by the pleadings? Did the parties actually make an issue on the merits of the order as well as on the conclusiveness of the order? It seems to us that the parties did make an issue on the merits of the order because the order awarded the fee and the pleadings made an issue on the fee. The attack on the fee is necessarily an attack on the order which allowed the fee.

These are the relevant parts of the pleadings. The Bank's trial pleading was the first amended original petition, to which were subjoined pleas answering appellees' cross action. The amended petition added to allegations of the original some statements describing parties and then copied paragraphs 1 to 6, inclusive, of the original. In these paragraphs was alleged an omission of parties from the proceeding of July 14th. The original petition also contained paragraphs numbered 7 and 8 and contained a prayer, and so does the amended petition. Various changes in paragraphs 7 and 8 and in the prayer were made in the amended petition. In paragraph 7 the Bank alleged in substance that necessary parties were omitted from the proceeding of July 14th and therefore the order of July 14th was void or voidable; that some beneficiaries were now so claiming and were claiming further that the trustees were not authorized to pay the fee; and that before the Bank paid the order (termed "judgment") *or* "the attorneys fee therein decreed to be due and payable" it was necessary that the Bank "have adjudicated and determined that the payment of said judgment of July 14, 1952, *or* of the attorneys' fees therein decreed to be due and payable, out of the funds of the – Trust is in all things authorized, proper and valid." Paragraph 8 alleges that by reason of claims made in behalf of appellees "there now exists a substantial dispute as to the liability of the – Trust for interest on said attorneys' fees from the date same were ordered payable by said judgment of July 14, 1952." The prayer was that the Bank "have judgment – declaring – said judgment of July 14, 1952, is invalid and void," *but* that the $1,500 fee actually paid under that order was reasonable and chargeable to the Trust "and in the alternative (if) said judgment – is held – valid or – an approved claim against the – Trust – now due and payable that it have judgment that the – attorneys' fees awarded by said judgment is payable" in certain ways. The Bank also prayed for general relief.

This pleading very clearly raised the issue, whether the attorneys' fee was nevertheless owed if necessary parties were omitted from the proceeding of July 14th. Did this involve the "validity" of the order? It seems to us that it necessarily did, and the existence of this question was, of course, the justification for this suit by the Bank. For it was of no consequence to the Bank as Trustee or to the beneficiaries that parties were omitted from the proceeding of July 14th if the fee was owed and was *not* disputed.

The pleading of appellee Biggs was adopted by other appellee attorneys and it alleges facts by reason of which the fee is claimed in behalf of said attorneys and the prayer concludes with a request for judgment that Leon Mitchell and Vick Mitchell were authorized to employ counsel and that "by reason of their employment of R. E. Biggs to represent – said Trust – the said – Trust – became liable for their indebtedness to – R. E. Biggs for a reasonable attorneys' fee for himself – with a sufficient sum" to pay the other counsel whom Mr. Biggs had employed. It was in response to this pleading that the Bank, styling itself a cross-defendant and styling Mr. Biggs and other appellee attorneys cross-plaintiffs, filed the answer, mentioned above, subjoined to its first amended original petition. Furthermore, in paragraph 3 of their answer, the trustees Leon Mitchell and Vick Mitchell alleged that the order of July 14th was final but "in the alternative (if) the court – decide – it had not been fully and finally decided, these trustees – petitioned the court to allow the attorneys – a reasonable fee for their services – and show the court that a reasonable at-

torneys' fee – would be the sum of $47,-311.35." This was the sum awarded by the order of July 14th.

On the other hand, paragraph 3 of the answer filed by appellant remaindermen attacked the fee on the merits, alleging that in defending Mitchell v. Mitchell the trustees Leon Mitchell and Vick Mitchell "were acting in their own behalf and to avoid their own liability to the Trust" and that the services of appellee attorneys were actually rendered in support of an attempt to prevent said trustees being held liable to the Trust for funds which they had wrongfully paid out. A similar attack on the merits of the fee was made in paragraph VII of the answer filed by Alphonsince Cormier, et al.

These pleadings, the Bank's and those of the appellees and of the beneficiaries, considered together, put in issue the question whether the fee was owed, not merely as something apart from the validity of the order of July 14th but as affecting the validity of that order. That is, the question was raised whether the order of July 14th was good on the merits of the claim it adjudicated. The language quoted from the trial court's judgment is not limited to any specific ground of attack and the general determination that the order of July 14th was "valid, subsisting and proper" and was binding and that the attorneys' fee should be paid pursuant to said order will be taken by us as meaning that the order was good in substance, that is, that the fee was owed, as well as good against the attack made on it for lack of parties.

We turn now to appellees' motion for rehearing. On the first rehearing we concluded that beneficiaries not cited were entitled to the notice of the suit now on appeal which is prescribed by Subdivision B of Section 19, Article 7425b, V.A.T.S., but had not received this notice and that this was fundamental error which required us to set aside the trial court's judgment and to remand the cause. To this judgment the appellees filed a motion for rehearing which we will not discuss in full. Our conclusion that we had authority to act on the ground of fundamental error

was an extension of an opinion expressed by Justice Powell in Egan v. Lockney Farmers' Co-op. Soc., Tex.Com.App., 284 S.W. 937, at page 938, and also see Harlington Land & Water Co. v. Houston Motor Car Co., Tex.Com.App., 209 S.W. 145, at page 146. Our theory was that the appellants' motions for rehearing suggested the question and required an investigation which gave us such information as these motions and the parties' briefs did not contain. We were also of the belief that we had some small discretion in applying this rule, inferring this discretion from holdings in the Egan opinion, 284 S.W. 940, and in Cammack v. Rogers, 96 Tex. 457, at page 461, 73 S.W. 795, that the Court of Civil Appeals had a discretion in determining whether an assignment of error was sufficient. However, we have decided that we made use of the statement of facts which Justice Powell's expression of opinion did not authorize and for this reason we retract our holding of fundamental error and grant the appellees' motion for rehearing. This conclusion requires that our original judgment of affirmance be reinstated.

Appellees, in support of the trial court's judgment, have called our attention to the fact that the Supreme Court awarded an attorney's fee in Mitchell v. Mitchell although all of the beneficiaries were not parties to that suit. The grounds on which the court acted are not known to us, but the court did not purport to enforce a contractual obligation as the appellees do here. We infer that the fee awarded in Mitchell v. Mitchell was granted on the principle that one having an interest in a fund is entitled to expenses incurred by him in protecting the fund.

We will add this, in order that there may be no misunderstanding about the matter, that the conclusions stated in our original opinion were based upon and thus limited to the facts related in that opinion.

The judgment rendered on the first rehearing is set aside, the judgment rendered on the original hearing is reinstated, and the judgment of the trial court is affirmed.